LUIGI DI RE AND CAROLINE DI RE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Di Re v. Commissioner
Docket No. 11222-91
United States Tax Court
T.C. Memo 1994-274; 1994 Tax Ct. Memo LEXIS 277; 67 T.C.M. (CCH) 3096; June 16, 1994, Filed *277 For petitioners: A. Jerry Busby. For respondent: Stephen J. McFarlane. WRIGHT
WRIGHT
MEMORANDUM OPINION WRIGHT, Judge: This matter is before the Court on petitioners' motion for an award of reasonable litigation and administrative costs under Rule 231 and section 7430. [1] The merits of the underlying case were decided in Di Re v. Commissioner, T.C. Memo. 1993-523, filed November 16, 1993, and to the extent necessary for the disposition of this motion, the facts and holdings in T.C. Memo. 1993-523 are incorporated by this reference. References to petitioner in the singular are to Luigi Di Re. The primary issue for our consideration in the underlying case was whether petitioners failed to report income from gambling winnings for each of the taxable years 1986, 1987, 1988, and 1989. We held *278 that petitioners did not fail to report taxable income from gambling winnings for the years at issue, and therefore, found it unnecessary to consider the other issues in the case relating to various additions to tax determined by respondent in the notice of deficiency. A summary of the pertinent facts follows. Petitioner was heavily involved in gambling at greyhound dog racing tracks. During the years at issue, petitioner gambled 7 days a week at Phoenix Greyhound Park, a dog racing track. Generally, petitioner started his nightly betting with $ 600 to $ 800 in cash, and if petitioner lost that amount, he cashed checks at the track in order to continue gambling. Petitioner continued to parlay his winnings into new bets up to the last and 13th race of the evening, the twin trifecta, in which he gambled his entire night's winnings, if any. Petitioner had unlimited check writing authority at the Phoenix Greyhound Park, and in addition to writing checks, petitioner obtained cash from an automated teller machine located at the track. The record clearly shows that petitioner did not cash checks or obtain cash at the track for any reason other than gambling. Petitioner redeposited *279 his winnings, if any, into his checking account, less the cash he started with each evening. Under section 7430(a), a "prevailing party", in specified civil tax proceedings, may be awarded a judgment for reasonable administrative and litigation costs. To be a prevailing party under section 7430(c)(4), the party seeking such award must: (1) Establish that the position of the United States in the proceeding was not substantially justified, sec. 7430(c)(4)(A)(i); (2) substantially prevail with respect to the amount in controversy, or have substantially prevailed with respect to the most significant issue or set of issues presented, sec. 7430(c)(4)(A)(ii); and (3) establish that he or she has a net worth which did not exceed $ 2 million at the time the proceeding was commenced, sec. 7430(c)(4)(A)(iii). Additionally, a judgment for administrative and litigation costs will not be awarded under section 7430(a) unless the Court determines: (1) That the prevailing party has exhausted the administrative remedies available with the Internal Revenue Service (IRS or Service), sec. 7430(b)(1); and (2) that the prevailing party has not unreasonably protracted the court proceeding, sec. 7430(b)(4). *280 See Polyco, Inc. v. Commissioner, 91 T.C. 963 (1988); Sher v. Commissioner, 89 T.C. 79, 83 (1987), affd. 861 F.2d 131 (5th Cir. 1988). A party seeking costs bears the burden of proving that he is entitled to them. Coastal Petroleum Refiners, Inc. v. Commissioner, 94 T.C. 685, 688 (1990); Stieha v. Commissioner, 89 T.C. 784, 790 (1987). We now examine the above-mentioned factors as they bear on the issue presented in the instant case. Respondent agrees that petitioners substantially prevailed in the underlying litigation, met the net worth requirement, and have not unreasonably protracted the Court proceeding. Thus, we will begin our analysis considering whether respondent's position was substantially justified. Whether the position of the United States in this proceeding was substantially justified depends on whether respondent's position and actions were reasonable in light of the facts of the case and the applicable legal precedents.[2]Pierce v. Underwood, 487 U.S. 552 (1988); Huffman v. Commissioner, 978 F.2d 1139, 1146 (9th Cir. 1992), *281 affg. in part, revg. in part and remanding T.C. Memo. 1991-144; Sher v. Commissioner, supra at 84. The fact that respondent ultimately is unsuccessful at litigation or concedes the case is not necessarily determinative that respondent's position was unreasonable. Wasie v. Commissioner, 86 T.C. 962, 969 (1986). Petitioners bear the burden of proving that respondent's position was not substantially justified. Rule 232(e); Huffman v. Commissioner, supra at 1145. Petitioners claim that they are entitled to both administrative costs and litigation costs. Petitioners must therefore separately establish that respondent's position in each of the proceedings, administrative and judicial, was not substantially justified. Id. at 1146. In deciding whether petitioners have met their burden, we will examine the basis for respondent's position and the manner in which the position was maintained. Wasie v. Commissioner, supra at 969. *282 With respect to a claim for reasonable administrative costs, the position of the United States means the position taken by the United States in any administrative proceeding to which section 7430 applies as of the earlier of (1) the date of the receipt by the taxpayer of the notice of decision of the Appeals Office of the Service, or (2) the date of the notice of deficiency. Sec. 7430(c)(7)(B). It appears from the record that prior to the issuance of the notices of deficiency, the instant case had not been considered by any Service Appeals office and therefore no notice of any decision of such an office was sent to petitioners. Accordingly, for purposes of petitioners' claim for reasonable administrative costs, the position of the United States means the position taken by the Service in an administrative proceeding to which section 7430 applies as of March 20, 1991, the date of the notices of deficiency in the instant case. With respect to a claim for reasonable litigation costs, the position of the United States means the position taken by the United States in a judicial proceeding to which section 7430 applies. Sec. 7430(c)(7)(A). Thus, the position of the United States means *283 the position taken by respondent in the instant case. This case was commenced by the filing of the petition on June 6, 1991. Therefore, the position of the United States for purposes of petitioners' claim for reasonable litigation costs is the position first taken by respondent in the instant case on or after June 6, 1991. In meeting their burden of demonstrating that the position of the United States was not substantially justified, petitioners must show that, as of the time period applicable under section 7430(c)(7) in respect of each proceeding, legal precedent did not substantially support that position, given the facts available to respondent. Coastal Petroleum Refiners, Inc. v. Commissioner, supra at 688. Respondent's position on the date of the issuance of the notices of deficiency and on the date petitioners filed their petition, and thereafter, was that petitioners failed to report taxable income derived from gambling winnings during the taxable years at issue. In taking this position, respondent relied on the bank deposits method of reconstructing income. It is well established that where a taxpayer fails to maintain adequate records, *284 the Commissioner may prove the existence and amount of unreported income by any method that will clearly reflect the taxpayer's income. Sec. 446(b); Holland v. United States, 348 U.S. 121, 130-132 (1954); Harper v. Commissioner, 54 T.C. 1121 (1970). The premise underlying this method of income reconstruction is that, absent some explanation, a taxpayer's bank deposits represent taxable income. The total of all deposits is determined by respondent to arrive at the taxpayer's income. Adjustments are then made to eliminate deposits that reflect nonincome items such as gifts, loans, transfers between bank accounts, and redeposits. We found that petitioners failed to keep adequate records, and that respondent's use of the bank deposits method was appropriate. Thus, we find respondent's use of the bank deposits method in the instant case to be reasonable. We now must determine whether respondent applied the method in a reasonable manner. Petitioners contend that respondent's position at both the administrative level and the litigation phase was not substantially justified because respondent, using the bank deposits method, *285 failed to "back out" or give credit to petitioners for redeposits of funds into their bank account. In essence, petitioners claimed that they were not given credit for the full amount of petitioner's gambling losses. Petitioners further contend that respondent acted unreasonably in pursuing this litigation after respondent was made aware of petitioner's wagering expenses. The existence of information with respect to the amount of any gambling losses or cash redeposits into petitioners' bank accounts was within the exclusive knowledge of petitioners. Until this information is shared with respondent, respondent has no way of knowing the extent of nontaxable sources of income, if any. When there is a factual determination of this kind with respect to a tax return, respondent is not obliged to concede the case until the necessary documentation is received to prove the taxpayer's contentions and claims. Sokol v. Commissioner, 92 T.C. 760, 765 n.10 (1989). Indeed, it would be unreasonable to require respondent to make a blind concession rather than continuing the factual investigation. Three months before trial, petitioners' counsel and expert witness *286 met with an IRS Appeals officer at which time petitioners provided copies of checks written to a racetrack, a source and application of funds schedule for 1 year in controversy, and a bank account analysis for that same year. Approximately 17 days before trial, petitioners provided respondent with a large, unorganized box of documents. A revenue agent organized and scheduled the material, and as a result, respondent was able to make several concessions. Two weeks before trial, respondent received petitioners' trial memorandum listing, for the first time, the witnesses petitioners intended to call. Petitioners' trial memorandum lists the witnesses that are to testify, but does not indicate in any detail what the content of their testimony will be. Respondent contends, based upon the proposed testimony as described in the trial memorandum, that petitioners' witnesses did not have sufficient personal knowledge to substantiate petitioners' claims. While it is true that we did find that respondent failed to credit petitioners for various gambling expenses, the burden of showing such duplications was on petitioners. See Zarnow v. Commissioner, 48 T.C. 213, 216 (1967). *287 Our finding for petitioners in the underlying case was based on (1) the testimony of several witnesses who had extensive firsthand knowledge of petitioner's gambling activity and who clearly demonstrated to this Court that petitioner was, without question, a net loser at the track, and (2) the documentary evidence provided by petitioners, including petitioner's canceled checks written to the track, his ATM activity at the track, his various loans, cashed-in CD's, and withdrawn IRA's. Respondent was at no time aware of the content of the witnesses' testimony and was not provided with all the documentary evidence until shortly before trial. On the basis of this record, we conclude that respondent's position and the manner in which it was maintained at both the administrative and trial level was reasonable in light of the facts and circumstances known to respondent. We find that petitioners have failed to establish that respondent's position was at any time substantially unjustified; thus, petitioners are not a "prevailing party" under section 7430, and we need not address the issue of whether petitioners exhausted their administrative remedies. Accordingly, petitioners are not *288 entitled to an award of reasonable administrative and litigation costs. To reflect the foregoing, An appropriate order and decision will be entered. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. For civil actions or proceedings commenced after Dec. 31, 1985, sec. 1551(d)(1) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, 2752, changed the language of sec. 7430 describing the position of the United States from "unreasonable" to "was not substantially justified." This and other courts, however, have held that the "substantially justified" standard is not a departure from the previous reasonableness standard. See also Sokol v. Commissioner, 92 T.C. 760, 764↩ n.7 (1989).