HARDWARE PLUS, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hardware Plus v. Commissioner
Docket No. 8690-92
United States Tax Court
T.C. Memo 1994-567; 1994 Tax Ct. Memo LEXIS 580; 68 T.C.M. (CCH) 1210; November 21, 1994, Filed *580 For petitioner: Arthur H. McQueen, Jr.
For respondent: John W. Sheffield III. DEAN
DEAN
MEMORANDUM OPINION DEAN, Special Trial Judge: This case was assigned pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182. [1]
The present matter is before the Court on petitioner's Motion For Award Of Reasonable Litigation Costs, filed July 5, 1994, pursuant to section 7430 and Rule 231. [2] The merits of the underlying case were decided in Hardware Plus, Inc. v. Commissioner, T.C. Memo. 1994-250, filed June 2, 1994, and to the extent necessary for the disposition of this motion, the facts and holdings in T.C. Memo. 1994-250 are incorporated by this reference. *581 The issue in the prior Memorandum Opinion was whether certain payments made by Hardware Plus, Inc. (hereinafter Hardware Plus or petitioner), to a third party represented the amortizable cost of a covenant not to compete. Prior to September 30, 1988, petitioner was operating as a representative for a variety of hardware manufacturers in South Carolina and a portion of North Carolina. Seeking to expand its territory of representation, petitioner entered into a written agreement (hereinafter Agreement) with Lee Smith Sales, Inc. (hereinafter Lee Smith Sales), on September 29, 1988. By the Agreement, Lee Smith Sales, which had been operating as a manufacturers' representative in Virginia and North Carolina, agreed to transfer its right to represent five named manufacturers (hereinafter the manufacturers) to petitioner. In return, petitioner promised to pay Lee Smith Sales an initial payment of $ 20,000, a subsequent payment of $ 5,000, and a declining percentage of net commissions earned from the manufacturers for a period of 5 years. An integral part of this arrangement was a covenant by Lee Smith Sales and its president and sole shareholder, Lee Smith (hereinafter Smith), not *582 to compete with petitioner for the manufacturers' business. On its 1988 and 1989 income tax returns, petitioner deducted a portion of the payment it was required to make under the terms of the Agreement. Respondent disallowed these deductions and determined deficiencies in petitioner's income tax for the taxable years 1988 and 1989. Respondent's litigation position was that, under the Agreement, petitioner purchased more than a covenant not to compete; it purchased a bundle of assets, among which were the relationships that Lee Smith Sales had built up with the manufacturers over many years. Respondent argued that those assets formed a nonamortizable customer-based intangible in the nature of goodwill. We disagreed, finding that the amount of consideration contracted for under the Agreement was, as petitioner argued, solely for the covenant not to compete -- an asset with a determinable useful life. Accordingly, we held that the payments made by petitioner were properly amortized on its 1988 and 1989 income tax returns. Section 7430 provides that, in any court proceeding brought by or against the United States, the "prevailing party" may be awarded reasonable litigation costs. *583 Sec. 7430(a). A taxpayer is a prevailing party only if it establishes that: (1) The position of the United States in the proceeding was not substantially justified; (2) it substantially prevailed with respect to the amount in controversy or with respect to the most significant issue presented; and (3) it met the net worth requirements of 28 U.S.C. section 2412(d)(2)(B) on the date the petition was filed. Sec. 7430(c)(4)(A). In addition, the taxpayer must also establish that it exhausted the administrative remedies available to it within the Internal Revenue Service and that it did not unreasonably protract the proceedings. Sec. 7430(b)(1), (4). Respondent concedes that petitioner (1) substantially prevailed in the underlying case, (2) met the net worth requirements, (3) exhausted administrative remedies available to it within the Internal Revenue Service, and (4) has not unreasonably protracted the court proceedings. Respondent disagrees with petitioner's claim that her position in the case was not substantially justified. Furthermore, respondent asserts that the amount of costs claimed by petitioner is not reasonable. Respondent's position *584 for purposes of the present matter is that taken on June 22, 1992, the date respondent filed her answer. See Han v. Commissioner, T.C. Memo. 1993-386. Whether respondent's position was substantially justified turns on a finding of reasonableness. See Sokol v. Commissioner, 92 T.C. 760, 763-764 n.7 (1989), and cases cited therein. Petitioner has the burden of proof on this issue. Rule 232(e); Stieha v. Commissioner, 89 T.C. 784, 790 (1987). Respondent's position throughout the case was that petitioner accomplished in substance what it could not otherwise accomplish in form: a transfer by Lee Smith Sales of its right to represent the manufacturers. The contracts between Lee Smith Sales and the manufacturers clearly demonstrated that Lee Smith Sales was not permitted to transfer or assign its rights to a third party. The covenant not to compete, respondent argued, was therefore an alternative means devised to reach the same result. Consequently, respondent asked that we find that the covenant not to compete was inextricably linked to the concurrent transfer of goodwill existing between *585 the manufacturers and Lee Smith Sales. Unpersuaded, we ultimately found that the only thing petitioner purchased under the Agreement was the covenant not to compete. For purposes of the present motion, however, we are unable to say that respondent unreasonably interpreted the objective facts as supporting her position. Revisiting the findings of fact in our prior Memorandum Opinion, we note that despite the prohibition against transfers stated in the contracts between Lee Smith Sales and the manufacturers, the Agreement clearly contemplates such a transaction. [3] *588 That respondent might interpret a transfer of the right to represent the manufacturers to be the parties' true intentions is further supported by a document signed during audit by Daryl Fisher and James Roberts, the officers and sole shareholders of Hardware Plus. Identified as a "Consent Action for the board of directors of * * * [Hardware Plus]", the document states: The undersigned, being all of the directors of the corporation hereby consent to the following: That the President of the corporation is authorized to negotiate and conclude an agreement to acquire the customers and factories currently represented *586 in North Carolina and Virginia by Lee Smith Sales, Inc. [Emphasis added.]
We further note the chronology of events surrounding the signing of the Agreement: (1) Smith notified the manufacturers on or about September 1, 1988, that Lee Smith Sales was terminating its contracts with them as of October 1, 1988; (2) each of the manufacturers, save one, [4] notified petitioner by letters dated between September 20, 1988, and September 27, 1988, that it was appointed as the manufacturers' representative for the desired areas; (3) two days after receiving the last of these letters, petitioner and Lee Smith Sales signed their Agreement; and (4) petitioner began representing the manufacturers on October 1, 1988. This was a well-timed sequence of events, with each step depending on the successful completion of another. We think it is unlikely that the Agreement would have been signed had the manufacturers not first agreed to petitioner's representation. In light of this fact, taken in conjunction with the prior mentioned statements of the participants, we cannot find that respondent's position was unreasonable or lacked substantial justification. See Pierce v. Underwood, 487 U.S. 552, 565 (1988) *587 (construing similar language under the Equal Access to Justice Act, 28 U.S.C. sec. 2412 (1988)).
Our conclusion is not diminished by the fact that we found for petitioner in the underlying matter. The determination of whether the Commissioner's position was substantially justified is based on all the facts and circumstances surrounding a proceeding; the fact that the Commissioner ultimately loses the case is not determinative. See Bowles v. United States, 947 F.2d 91, 94 (4th Cir. 1991); Wasie v. Commissioner, 86 T.C. 962, 968-969 (1986); DeVenney v. Commissioner, 85 T.C. 927, 930 (1985). Having found that respondent's position was not unreasonable as a matter of fact, we next determine whether it was unreasonable as a matter of law. See Pierce v. Underwood, supra at 564-565; Renner v. Commissioner, T.C. Memo. 1994-372. As stated in our prior Memorandum Opinion, respondent relied heavily on Newark Morning Ledger Co. v. United States, 507 U.S.    , 113 S. Ct. 1670 (1993), *589 for support of her position. Petitioner bears the burden of proving that respondent's reliance on this case, as well as others, was not substantially justified. In the underlying case, we were unwilling to hold that the list of manufacturers constituted a customer-based intangible or self-regenerating mass asset as described in Newark Morning Ledger. That conclusion was reached after we had first decided that the consideration paid by petitioner was solely for the covenant not to compete. For purposes of the present motion, however, we have already stated that it was not unreasonable for respondent to interpret the facts in the manner that she did. Accordingly, it is in the context of this interpretation that we must determine whether respondent's application of the law was unreasonable. Petitioner cannot satisfy its burden on this issue by simply restating the applicable law or paraphrasing our holding in the underlying case. Petitioner must make specific arguments regarding the reasonableness of respondent's legal analysis. On brief, petitioner simply restates its position that the only thing contracted for in the Agreement was the covenant not to compete -- an intangible *590 amortizable under section 167(a) and Newark Morning Ledger. The validity of the covenant, however, was never disputed by respondent; the issue litigated was whether the covenant was inextricably linked with a non-amortizable asset in the nature of goodwill. As to this point, petitioner offered no substantive argument in its brief. [5] Petitioner did not demonstrate why respondent's interpretation of applicable law, particularly Newark Morning Ledger, was unreasonable. Petitioner has therefore failed to meet its burden on this issue. Accordingly, we are unable to find that respondent's litigation position, although ultimately unsuccessful, was not substantially justified in light of the facts of the case and applicable legal precedent. [6]
*591 Based on the foregoing, petitioner's motion for award of reasonable litigation costs will be denied. To reflect the foregoing, An appropriate order and decision will be entered. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Sec. 7430 and Rule 231↩ also allow petitioner to seek an award of reasonable administrative costs. Petitioner's motion, however, seeks only reasonable litigation costs.
3. The Agreement between Lee Smith Sales and petitioner states that "LEE SMITH SALES, INC. hereby agrees to transfer to * * * [Hardware Plus] its right to represent the * * * [manufacturers]." (Emphasis added.) We found in our prior Memorandum Opinion that the participants' true intentions were represented in a later clause of the contract, which stated that "LEE SMITH SALES, INC. and LEE SMITH, individually, do not have an exclusive right to represent the manufacturers referred to herein, and therefore, LEE SMITH SALES, INC. and LEE SMITH are receiving the compensation set forth herein as payment for the covenant not to compete". Nevertheless, as respondent argues on brief, petitioner was a party to the drafting of the Agreement, and was responsible for knowing its contents. The presence of a statement that is misleading or wrong is therefore petitioner's responsibility. Accordingly, petitioner will not be heard to complain that respondent did not properly divine the Agreement's intended meaning, especially in light of other objective facts discussed infra↩.
4. The one exception was Solar Hardware Co.↩
5. Petitioner simply states that there was "no source" for the "mass asset" alleged by respondent, and that respondent's litigation position was akin to arguing that "someone can sell their friendship with someone else". This is insufficient for us to find that petitioner has met its burden of proof in this matter.↩
6. Having so found, we need not address the issue of whether the costs claimed by petitioner were reasonable in amount.↩