KENNETH E. STIEHA JR., AND LEE E. STIEHA, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 44082-86.        Filed October 8, 1987.

*Michael E. Kearney*, for the petitioner.
*Thomas E. Crowe*, for the respondent.

OPINION

WILLIAMS, *Judge*: This case is before us on petitioners' motion for litigation costs seeking $3,900 in attorneys' fees. In his notice of deficiency dated August 13, 1986, the Commissioner determined deficiencies in petitioners' Federal income tax for the taxable years 1979[1] and 1982 and an addition to tax for the taxable year 1982 as follows:

| Year | Deficiency | Sec. 6653(a)[2] addition to tax |
|------|-----------|--------------------------------|
| 1979 | $420 | 0 |
| 1982 | 9,921 | $496.05 |

The deficiencies were based entirely on the disallowance of petitioners' distributive share of 1982 losses and investment tax credits from Missoula Water Works, Ltd. (MWW), a Montana limited partnership of which petitioners were a limited partner.

[1] The deficiency for 1979 is based entirely on respondent's disallowance of a carryback of investment tax credits from 1982.

[2] Internal Revenue Code of 1954 as amended and in effect during the year in issue. All subsequent Code references are to the Internal Revenue Code of 1986.

Petitioners timely filed their petition with this Court on November 17, 1986. On December 4, 1986, petitioners filed a motion to dismiss for lack of jurisdiction on the ground that respondent had failed to comply with the partnership audit and litigation procedures. Section 6221 et seq. On January 12, 1987, respondent filed a motion for extension of time to file objections to petitioners' motion, alleging that he had not received petitioners' motion in a timely manner and needed additional time to research the important questions of law that it raised. We granted respondent's motion on January 20, 1987. Respondent filed his notice of objection to petitioners' motion to dismiss on February 17, 1987, alleging that the notice of deficiency was properly issued because MWW was a partnership formed before September 3, 1982, and was thus not subject to the partnership audit procedures. By order dated April 2, 1987, we scheduled a hearing on petitioners' motion for April 22, 1987, at Washington, D.C. On April 21, 1987, respondent conceded the case. Accordingly, we granted petitioners' motion and dismissed the case for lack of jurisdiction. On May 26, 1987, petitioners filed a motion for litigation costs, to which respondent filed his notice of objections and memorandum in support thereof on July 27, 1987. Petitioners filed a reply to respondent's memorandum on August 23, 1987.

In general, section 7430 provides for an award of reasonable litigation costs to the prevailing party in a civil proceeding if the party has exhausted the available administrative remedies. Section 7430(c)(2) defines a prevailing party as one which (1) establishes that the position of the United States in the civil proceeding was not substantially justified;[3] (2) has substantially prevailed with respect to the amount in controversy or the most significant issue or set of issues presented; and (3) has a net worth not in excess of $2 million. Respondent concedes that petitioners have exhausted their administrative remedies and have substantially prevailed. We must decide (1) whether petitioners satisfy the net worth requirement of section 7430(c)(2)(A)(iii),

---

[3]The Internal Revenue Code of 1986 adopted the standard of substantial justification for all amounts paid or incurred after Sept. 30, 1986, in civil actions or proceedings commenced after Dec. 3, 1985. We have previously held that this standard is not a change from the prior reasonableness standard. *Sher v. Commissioner*, 89 T.C. 79 (1987).

and (2) whether respondent was substantially justified in pursuing the litigation against petitioners.

Petitioners submitted the affidavit of petitioner Kenneth E. Stieha, Jr., in which he avows that "At the date of the filing of the petition in this matter, the net worth of myself and my wife, Lee E. Stieha, was less than $2,000,000.00". Respondent has not submitted any contrary affidavit. Although petitioners have not proven the amount of their net worth at the time they filed their motion for litigation costs, we believe the time for determining net worth is at the time the civil proceeding in this Court commenced and, therefore, hold that petitioners have satisfied the net worth requirement.

Section 7430(c)(2)(A)(iii)[4] provides, first, that a prevailing party must meet the net worth requirements of 5 U.S.C. section 504(b)(1)(B) as in effect at the enactment of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085. This section of title 5 defines a party as, among other things, "an individual whose net worth did not exceed $2,000,000 *at the time the adversary adjudication was initiated.*" (Emphasis added.) Section 7430(c)(2)(A)(iii) provides further that 5 U.S.C. section 504(b)(1)((B) (Supp. III 1985) is to be applied "by taking into account the commencement of the proceeding described in subsection (a) in lieu of the initiation of the adjudication referred to in such section." The reference in section 7430(c)(2)(A)(iii) to the "proceeding described in subsection (a)," appears to be unambiguous— the "proceeding" described is the "civil proceeding." Subsection (a) "describes" this proceeding as "any civil proceeding which is—(1) brought by or against the United States in connection with the determination, collection, or refund of

---

[4]SEC. 7430. AWARDING OF COURT COSTS AND CERTAIN FEES.

(c) DEFINITIONS.—For purposes of this section—

\* \* \* \* \* \* \*

(2) PREVAILING PARTY —

(A) IN GENERAL.—The term "prevailing party" means any party to any proceeding described in subsection (a) (other than the United States or any creditor of the taxpayer involved) which—

\* \* \* \* \* \* \*

(iii) meets the requirements of section 504(b)(1)(B) of title 5, United States Code (as in effect on the date of the enactment of the Tax Reform Act of 1986 and applied by taking into account the commencement of the proceeding described in subsection (a) in lieu of the initiation of the adjudication referred to in such section).

any tax, interest, or penalty under this title, and (2) brought in a court of the United States (including the Tax Court and the United States Claims Court)." Subsection (a) further provides that a prevailing party in this "civil proceeding" "may be awarded a judgment * * * for reasonable litigation costs." The civil proceeding before this Court is the litigation between the taxpayer and the Government. See *Weiss v. Commissioner*, 88 T.C. 1036 (1987). Thus, on its face, section 7430(c)(2)(A)(iii) seems to set the time for measuring net worth at the commencement of the litigation.

The most natural reading of the remaining phrase of section 7430(c)(2)(A)(iii), viz, "in lieu of the initiation of the adjudication referred to in such section" confirms that the time of measuring net worth is the time the litigation commences. Based on the legislative history of 5 U.S.C. section 504(b)(1)(B), we conclude that the reference to title 5 is intended to reinforce the distinction between administrative proceedings before the Internal Revenue Service (the costs of which are not reimbursable) and the civil proceeding which is the litigation in this Court.

5 U.S.C. section 504(b)(1)(B) was enacted in 1980 as part of the Equal Access to Justice Act, Pub. L. 96-481, 94 Stat. 2325 (EAJA). The EAJA includes two attorneys' fees provisions. Section 203, adding section 504 to title 5, United States Code, provides for awards of attorneys' fees and costs to a prevailing party other than the United States in an adversary adjudication. An "adversary adjudication" is an administrative proceeding required by statute to be determined on the record after an opportunity for a hearing and in which the position of the United States is represented by counsel or otherwise. 5 U.S.C. sections 504(b)(1)(C) and 554. Section 204, amending section 2412 of title 28, United States Code, provides for awards of attorneys' fees and costs to a prevailing party other than the United States in a civil action brought against the United States in any court. The EAJA thus draws a distinction between agency proceedings and court proceedings. See *S & H Rigger & Erectors, Inc. v. U.S.H.A.*, 672 F.2d 426, 428 (5th Cir. 1982). Whether a party satisfies the requirements is measured, respectively, at the time the adversary adjudication in an administrative agency was initiated, or the civil action in a

court was filed. See H. Rept. 96-1418, 96th Cong., 2d Sess. 9 (1980). The net worth requirements of 5 U.S.C. section 504(b)(1)(B) and 28 U.S.C. section 2412(d)(2)(B) are, in all other relevant respects, identical.

A civil proceeding as defined in section 7430(c)(3) includes litigation in this Court. *Weiss v. Commissioner*, 88 T.C. at 1039. Thus, the distinction drawn in the EAJA between adversary adjudications and civil actions is analogous to the distinction between administrative proceedings within the Internal Revenue Service and the civil proceeding commenced by the filing of a petition in this Court. Section 7430 authorizes an award only for costs incurred in the civil proceeding, not at the administrative level. See sec. 7430(a). It appears that Congress incorporated 5 U.S.C. section 504(b)(1)(B) by reference in section 7430(c)(2)(A)(iii) to make clear that because only costs incurred after the civil proceeding commences are compensable, the date that the civil proceeding commences is the appropriate time to measure the taxpayer's net worth.

Our interpretation is consistent with Congress' goals in enacting section 7430 and amending it in the Tax Reform Act of 1986. Congress added section 7430 to the Code as part of the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, section 292, 96 Stat. 572, to provide for awards of litigation costs in Tax Court proceedings. Congress was concerned that 28 U.S.C. section 2412, as amended by the EAJA, provided for awards of litigation costs in civil tax cases brought in a District Court or the Court of Claims, but did not apply to Tax Court litigation. H. Rept. 97-404, at 11 (1981).

In the Tax Reform Act of 1986, Congress amended section 7430 to conform it more closely to the EAJA. S. Rept. 99-313, at 198 (1986), 1986-3 C.B. (Vol. 3) 198. One of the amendments was to make the net worth limitations of the EAJA applicable in all tax cases. H. Rept. 99-841 (Conf.), at II-802 (1986), 1986-3 C.B. (Vol. 4) 802. Title 28 U.S.C. section 2412(d)(2)(B) defines a party eligible for an award of litigation costs as, among other things, "an individual whose net worth did not exceed $2,000,000 at the time the *civil action* was filed." (Emphasis added.) A reading of section 7430(c)(2)(A)(iii) that measures net worth at the time

the civil proceeding began in this Court furthers Congress' goal of conforming section 7430 to the EAJA.

Further, Congress sought to "deter abusive actions or overreaching by the Internal Revenue Service" in enacting section 7430. H. Rept. 97-404, at 11 (1981). Our interpretation of section 7430(c)(2)(A)(iii) is consistent with this expressed congressional purpose. If respondent's position in litigation is not substantially justified, assuming that the other conditions for an award of litigation costs have been met, an award of litigation costs recognizes that the litigation either should never have occurred or (as discussed below in this case) should not have been prolonged. In either circumstance, because the Government's position was not substantially justified, costs were incurred by the taxpayer in the civil proceeding that should not have been incurred. Section 7430 contemplates an award precisely so that a taxpayer will be restored financially and preserved from wasting his resources in arguing over a position that is not substantially justified. In determining whether a taxpayer qualifies for an award of fees, it is most appropriate therefore, look to his financial position at the time he files a petition commencing the civil proceeding.

Having held that petitioners satisfy the net worth requirement of section 7430(c)(2)(A)(iii), we must next determine whether respondent's position in the litigation was substantially justified. Petitioners bear the burden of proof on this issue.[5]

At the time respondent issued his notice of deficiency to petitioners on August 13, 1986, no cases had been decided concerning the commencement date of a partnership's first taxable year for purposes of the partnership audit and litigation procedures. Sec. 6221 et seq. On December 8, 1986, this Court filed its opinion in *Sparks v. Commissioner*, 87 T.C. 1279 (1986). *Sparks* was the first case to discuss factors indicative of the formation of a partnership and was dispositive of the issue presented in petitioners' motion to

---

[5]Under the EAJA, 28 U.S.C. sec. 2412, the Government bears the burden of proving that its litigating position was substantially justified. In enacting the Tax Reform Act of 1986, the Senate sought to place the burden of proof under sec. 7430 on respondent. S. Rept. 99-313, 99th Cong., 2d Sess. 198-199 (1986), 1986-3 C.B. (Vol. 3) 198-199. The Conference report adopted the "substantially justified" language of the EAJA but declined to alter the burden of proof. H. Rept. 99-841 (Conf.), at II-802 (1986), 1986-3 C.B. (Vol. 4) 802.

dismiss. Consequently, at the time he issued his notice of deficiency and until the release of our opinion in *Sparks*, respondent was substantially justified in taking the position that MWW's first taxable year commenced on September 1, 1982.

Respondent's actions after our opinion in *Sparks* was issued, however, were not substantially justified. On January 12, 1987, respondent filed a motion for extension of time to file objections to petitioners' motion to dismiss, alleging that he had not received petitioners' motion in a timely manner and that "Petitioners' Motion to Dismiss for Lack of Jurisdiction raises important questions of law involving TEFRA partnership actions, upon which respondent must conduct legal and factual research in order to accurately and adequately respond." We granted respondent's motion on January 20, 1987. On February 17, 1987, respondent filed his notice of objection to petitioners' motion to dismiss. From his notice of objection, it is apparent that respondent had ignored our decision in *Sparks* on the partnership audit and litigation procedures (sec. 6221 et seq.), which he had requested an extension from this Court to research. When respondent finally reviewed petitioners' case on April 21, 1987, one day before our scheduled hearing on petitioners' motion to dismiss, he conceded that petitioners' position was correct.

Respondent's lack of diligence in reviewing petitioners' case, particularly because *Sparks* had been published 2 months before he filed his notice of objection, was not substantially justified. As a result of respondent's failure to review petitioners' case in a reasonable and timely manner, petitioners incurred more attorneys' fees than should have been necessary. They are, therefore, entitled to an award for those unnecessarily incurred costs.

Petitioners request $3,900, representing 31.2 hours in attorneys' fees billed at an hourly rate of $125 and incurred from the preparation of their petition through respondent's concession of the case. We have held that respondent was substantially justified in pursuing the litigation against petitioners until our opinion in *Sparks* was published on December 8, 1986. Consequently, petitioners are not entitled to compensation for 18.3 hours of attorneys' fees incurred

prior to December 8, 1986. Respondent requests that if we award costs, we order compensation for costs incurred after December 8, 1986. Petitioners are, therefore, entitled to compensation for 12.9 hours of attorneys' fees incurred after December 8, 1986.

Section 7430(c)(1)(A)(ii)(III) provides for an award of attorneys' fees paid or incurred in connection with a civil proceeding, except that such fees shall not exceed $75 per hour absent special factors justifying a higher rate. Petitioners' counsel cites (1) their normal billing rates, (2) the limited availability of tax counsel in Reno, Nevada, and (3) the lack of familiarity of tax practitioners in the area with partnership audit procedures as factors justifying an award of fees in excess of $75. We presume that Congress was aware that the prevailing hourly rates for tax attorneys in metropolitan areas normally exceed $75. Consequently, there must be a showing of "special" circumstances warranting a higher award. We find that petitioners have not shown that any special factor justifies a higher rate in this case. We, therefore, award petitioners $967.50 in attorneys' fees, representing 12.9 hours billed at an hourly rate of $75.

To reflect the foregoing,

*An appropriate order will be entered.*