T.C. Memo. 2005-116

UNITED STATES TAX COURT

HELEN E. FOY, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 18978-02.                    Filed May 19, 2005.

<u>Terri A. Merriam</u>, <u>Wendy S. Pearson</u>, and <u>Jennifer A. Gellner</u>,
for petitioner.

<u>Julie L. Payne</u> and <u>Robert Boeshaar</u>, for respondent.

MEMORANDUM OPINION

MARVEL, <u>Judge</u>:  This case is before the Court on
petitioner's motion for litigation and administrative costs

(motion)[1] pursuant to section 7430 and Rule 231.[2]  Petitioner resided in Kenmore, Washington, when her petition in this case was filed.

On April 2, 2004, we received and filed petitioner's motion. On that date, we also received the parties' signed decision document, which we filed as the parties' stipulation of settled issues.  By order dated June 7, 2004, we ordered respondent to file a response to petitioner's motion.  In accordance with the June 7 order and respondent's June 18, 2004, motion to extend time to file a response, which we granted on June 21, 2004, respondent's response to petitioner's motion was submitted and filed on August 4, 2004.

On September 3, 2004, we received and filed petitioner's motion for leave to file a reply to respondent's response, which we granted.  Petitioner's reply was filed on September 15, 2004. On December 6, 2004, we ordered petitioner to submit, on or before January 7, 2005, an additional declaration and supporting documentation to support the reasonableness of the costs claimed. On January 28, 2005, we received and filed respondent's

---

[1]Petitioner also filed an amended motion on Apr. 2, 2004. References to petitioner's motion are to petitioner's amended motion.

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect on the date petitioner's petition was filed, and all Rule references are to the Tax Court Rules of Practice and Procedure.

supplemental response.  On February 7, 2005, we received and filed petitioner's motion for leave to file supplemental declaration supporting petitioner's motion for litigation and administrative costs out of time, which we granted.  On February 9, 2005, we filed petitioner's supplemental declaration.

Neither party requested a hearing, and, after reviewing the relevant documents, we have concluded that a hearing on petitioner's motion is not necessary.  In disposing of petitioner's motion, we rely on the parties' filings and attached exhibits.

## Background

Petitioner and her husband, Donald Foy, invested in Shorthorn Genetic Engineering 1984-3 (SGE 1984-3), Durham Shorthorn Genetic Breeding Syndicate 1987-4 (DSBS 1987-4), and Timeshare Breeding Services JV (TBS JV), three of the many livestock breeding partnerships (Hoyt partnerships) formed and promoted by Walter J. Hoyt III (Mr. Hoyt) and/or related companies (Hoyt organization).[3]  Petitioner and Mr. Foy acquired

---

[3]Walter J. Hoyt III also organized, promoted, operated, and served as the general partner of more than 100 livestock breeding limited partnerships from 1971 through 1998.  See, e.g., River City Ranches #1, Ltd. v. Commissioner, T.C. Memo. 2003-150, affd. in part, revd. in part and remanded 401 F.3d 1136 (9th Cir. 2005).  In general, the Hoyt partnerships purchased cattle from related Hoyt entities for no money down and a promissory note.  See, e.g., Durham Farms #1, J.V. v. Commissioner, T.C. Memo. 2000-159, affd. 59 Fed. Appx. 952 (9th Cir. 2003); Shorthorn Genetic Engg. 1982-2, Ltd. v. Commissioner, T.C. Memo. 1996-515.

(continued...)

their partnership units jointly and titled their partnership interests as joint tenancies with right of survivorship. Petitioner wrote numerous checks to the Hoyt organization, and the Hoyt organization issued Schedules K-1 (Form 1065), Partner's Share of Income, Credits, Deductions, etc., with respect to SGE 1984-3, DSBS 1987-4, and TBS JV to petitioner and Mr. Foy jointly.

Petitioner and Mr. Foy filed joint Federal income tax returns for 1981 through 1986 on which they claimed substantial losses and an investment credit related to their investment in SGE 1984-3. Following an audit and related litigation,[4] respondent adjusted the Hoyt partnership losses and investment credit claimed on petitioner and Mr. Foy's 1981-1986 tax returns and assessed substantial income tax deficiencies.

---

[3](...continued)
The investors in the Hoyt partnerships assumed personal liability for the partnerships' promissory notes, made payments on the notes to the Hoyt partnerships, see, e.g., Shorthorn Genetic Engg. 1982-2, Ltd. v. Commissioner, supra, and, in return, deducted large partnership losses related to the purchase, management, and sale of livestock, see River City Ranches #1, Ltd. v. Commissioner, supra; Mekulsia v. Commissioner, T.C. Memo. 2003-138, affd. 389 F.3d 601 (6th Cir. 2004); Durham Farms #1, J.V. v. Commissioner, supra; Shorthorn Genetic Engg. 1982-2, Ltd. v. Commissioner, supra; Bales v. Commissioner, T.C. Memo 1989-568.

[4]According to respondent, the litigation regarding petitioner and Mr. Foy's investment in SGE 1984-3 was resolved by this Court's order and decision, entered on Nov. 27, 1996, in Shorthorn Genetic Engg. 1984-3, Ltd. v. Commissioner, docket No. 24514-89.

On or about August 2, 2000, petitioner submitted to respondent Form 8857, Request for Innocent Spouse Relief, in which she requested relief from joint and several liability for 1981-1993.[5]  Petitioner attached a supporting statement to the request in which she summarized the facts and law in support of her request for relief under section 6015(b).  Subsequently, by letter dated July 22, 2002, to Debra Brush, the Appeals officer to whom petitioner's request for section 6015 relief had been assigned, petitioner's attorney supplemented the facts and legal analysis in support of her request for relief under section 6015(b), (c), or (f).  In the July 22 letter, petitioner's attorney explained in detail the reasons why petitioner was entitled to an allocation of liability under section 6015(c).  Among other statements, petitioner's attorney represented that Mr. Foy had died on June 28, 1993, that petitioner satisfied all of the requirements for relief under section 6015(c), that there was no fraudulent asset transfer, and that petitioner did not have actual knowledge, at the time she signed the joint returns, of the items giving rise to the deficiencies.  In the letter, petitioner's attorney also reminded Appeals Officer Brush that the burden of proof is on the Commissioner to show actual

---

[5]The years at issue in this case are 1981 through 1986.  The years 1987 through 1993 are not at issue because no deficiencies have been determined or assessed.  In addition, petitioner did not file joint returns for 1994 through 1997.

knowledge, and she pointed out that this Court had granted relief under section 6015(c) to another Hoyt investor under similar factual circumstances in <u>Mora v. Commissioner</u>, 117 T.C. 279 (2001).  Although petitioner's attorney continued to maintain in the July 22 letter that petitioner was not a partner in the Hoyt partnerships in which petitioner and Mr. Foy had invested and that, therefore, the Hoyt partnership items on their 1981-1986 returns were items properly allocated to Mr. Foy, a fair reading of petitioner's contention is that she was entitled to relief under section 6015(c) and that she did not have any actual knowledge of the items giving rise to the deficiencies that were allocable to Mr. Foy.

Approximately 2 months later, respondent issued a Notice of Determination Concerning Your Request for Relief Under the Equitable Relief Provision of Section 6015(f) (notice of determination) with respect to petitioner's request for relief under section 6015.  Although the notice of determination referenced only section 6015(f), the explanation of adjustments addressed petitioner's claim for relief under section 6015(b), (c), and (f).  The explanation of adjustments stated as follows with respect to petitioner's request for relief under section 6015(c):

> **<u>IRC SECTION 6015(c)</u>--Election to Allocate Deficiency**
> This subsection is commonly called "separation of liability" which prorates a deficiency between spouses filing a joint return based on their proportionate

share of earnings.  Under this section, the requesting spouse must establish certain conditions before a (sic) relief can be granted.  Even if you meet the requirements for being a widow, you (sic) request for separation of liability will not be granted <u>because you had actual knowledge and the reason to know of the items giving rise to the deficiency that were allocable to your spouse</u>.  [Emphasis supplied.]

Petitioner submitted a timely petition contesting respondent's determination, which we filed on December 9, 2002. In her petition, petitioner alleged, in pertinent part, that respondent erred in concluding that petitioner did not qualify for relief under section 6015(c) and that "Respondent made no effort to prove, and failed to prove, that Petitioner had actual knowledge of the factual circumstances which made the tax items unallowable as a deduction."  As she did with her administrative request for relief under section 6015(c), petitioner included an extensive recitation of the facts on which she relied in support of her allegation, including the following:

> 6.p. Neither Petitioner nor Mr. Foy had actual knowledge of the underlying problems with the transactions, nor could they have discovered that Jay Hoyt failed to transfer title to livestock to the partnership and that he was otherwise converting partnership assets.
>
>           *     *     *     *     *     *     *
>
> 6.q. Due to the complexity of Jay Hoyt's fraud, it was impossible for either Petitioner or Mr. Foy to discover the true nature of the transactions.
>
> 6.r. Mr. Foy and all of the Hoyt investors were deceived by Jay Hoyt as to the nature of their investment and were ultimately determined by a court of law to be victims of his elaborate fraud.

On February 11, 2003, respondent's answer to petitioner's petition was filed. In his answer, respondent denied, without qualification, the representation in subparagraph 6.p. and denied the representations in subparagraphs 6.q. and r. "for lack of knowledge or information."

On February 23, 2004, this case was called for hearing during the Seattle, Washington, trial session. The parties reported that they believed they had a basis for settlement but were awaiting final Government approval. The case was scheduled for recall on March 2, 2004. At the recall, the parties reported that the case had been settled and requested until April 1, 2004, to submit a signed decision document. On April 2, 2004, the parties submitted a signed decision document, which we filed as a stipulation of settled issues. The stipulation of settled issues reflected that the parties had agreed to a section 6015(c) allocation with respect to petitioner's and Mr. Foy's 1981-1986 income tax liabilities as follows:

| Year | Joint tax liability before allocation | Petitioner's share under sec. 6015(c) |
|------|------|------|
| 1981 | $22,995.36 | -0- |
| 1982 | 22,461.15 | -0- |
| 1983 | 24,280.00 | -0- |
| 1984 | 8,057.93 | $51.46 |
| 1985 | 14,902.52 | -0- |
| 1986 | 10,607.08 | -0- |
| Total | 103,304.04 | 51.46 |

The allocation of liability under section 6015(c) was made by

treating petitioner's and Mr. Foy's investments in SGE 1984-3 as joint investments, allocating 50 percent of the SGE 1984-3 items to petitioner, and adjusting the allocation, as required by section 6015(d)(3)(B), for the tax benefit that petitioner's share of the partnership items provided to Mr. Foy.

In her motion, petitioner asserted that she met all of the requirements under section 7430 to recover litigation costs in the amount of $11,354.04. The administrative and litigation costs claimed in the motion were calculated using an hourly rate of $195 for two of petitioner's attorneys and included a claim of $5,916.20 for petitioner's alleged share of attorney's fees (the group fees) that petitioner's attorneys had charged to two groups of similarly situated Hoyt investor clients with pending section 6015 claims. In support of the motion, petitioner's counsel attached billing records for petitioner's account, dated September 10, 2002, to March 31, 2004, that described in detail the attorney's fees and costs petitioner incurred individually and contained generic entries[6] denoting monthly charges to petitioner's account for her alleged share of the group fees. Petitioner alleged that the group fees were reasonable and that

---

[6]Although petitioner agrees that the fee summary for her account attached to the motion describes her share of the "Group Innocent Spouse fees" as "flat" fees, petitioner contends that the flat fee reference is simply the way in which the Pearson-Merriam (petitioner's attorneys' law firm) billing program describes sum certain fees. Petitioner's representation is supported by a declaration of petitioner's counsel.

her share of the group fees had been reasonably allocated to her, but she did not include any supporting information or documentation to establish the nature of the work performed, the hourly rates used, the identity of the person who performed the work, the number of hours billed for the work, the number of Hoyt investor clients who shared in the group fees, or the manner in which the group fees were allocated to petitioner and to the other Hoyt investor clients of petitioner's attorneys.

On August 4, 2004, we filed respondent's response to petitioner's motion, in which respondent objected to an award of costs. Petitioner requested and was granted leave to file a reply to respondent's response to the motion. On September 15, 2004, we filed petitioner's reply to respondent's response, which included a supplemental declaration but did not provide any detailed information regarding her counsel's billing and allocation arrangements with respect to the group fees. On December 6, 2004, we ordered petitioner to submit, on or before January 7, 2005, an additional affidavit with supporting documentation to support her contention that the group fees were reasonable and had been reasonably allocated and that her share of the group fees was incurred in connection with this matter. In the December 6, 2004, order, we also authorized respondent to submit a supplemental response addressing the information

contained in petitioner's affidavit, on or before January 31, 2005.

Although petitioner did not submit the requested documents before January 7, 2005, respondent submitted a supplemental response, which we filed on January 28, 2005. On February 7, 2005, we received and filed petitioner's motion for leave to file supplemental declaration supporting petitioner's motion for litigation and administrative costs out of time, which we granted. On February 9, 2005, we filed petitioner's supplemental declaration, which contained billing records for fees and costs petitioner's attorneys had charged to common accounts for two separate groups of Hoyt investor clients. The billing records provided specific information about the nature of the work performed for the benefit of both groups of Hoyt investor clients and included charges to the common accounts that were computed using an hourly rate of $195 for two of petitioner's attorneys.

## Discussion

Section 7430(a) authorizes the award of reasonable administrative and litigation costs to the prevailing party in administrative or court proceedings brought by or against the United States in connection with the determination of income tax. In addition to being the prevailing party, in order to receive an award of reasonable litigation costs, a taxpayer must exhaust administrative remedies and not unreasonably protract the

administrative or court proceeding.  Sec. 7430(b)(1), (3).
Unless the taxpayer satisfies all of the section 7430
requirements, we do not award costs.  Minahan v. Commissioner, 88
T.C. 492, 497 (1987).

Section 7430(c)(4)(A) and (B)(i) provides that a taxpayer is
a prevailing party if (1) the taxpayer substantially prevailed
with respect to the amount in controversy or the most significant
issue or set of issues, (2) the taxpayer meets the net worth
requirements of 28 U.S.C. section 2412(d)(2)(B) (2000), and (3)
the Commissioner's position in the administrative or court
proceeding was not substantially justified.  See also sec.
301.7430-5(a), Proced. & Admin. Regs.  Although the taxpayer has
the burden of proving that the taxpayer meets requirements (1)
and (2), supra, the Commissioner has the burden of proving that
his position was substantially justified.  See sec.
7430(c)(4)(B)(i); Rule 232(e).

Respondent concedes that petitioner exhausted the available
administrative remedies as required by section 7430(b)(1), that
petitioner did not unreasonably protract the administrative and
court proceedings as required by section 7430(b)(3), and that
petitioner meets the net worth requirements of 28 U.S.C. section
2412(d)(2)(B).  In addition, respondent does not dispute that
petitioner substantially prevailed with respect to the amount in
controversy.  Respondent alleges, however, that his

administrative and litigating positions were substantially justified and that the costs petitioner claims are unreasonable.

A. Whether Respondent's Administrative and Litigation Positions Were Substantially Justified

For purposes of section 7430, an administrative proceeding is any procedure or action before the Internal Revenue Service (the Service), sec. 7430(c)(5), and the "position of the United States" in an administrative proceeding refers to the position taken by the Service as of the earlier of (i) the date of the receipt by the taxpayer of the notice of decision of the Internal Revenue Service Office of Appeals or (ii) the date of the notice of deficiency, sec. 7430(c)(7)(B); see also sec. 301.7430-3(a), (c), Proced. & Admin. Regs. In this case, the relevant position is that taken by the Appeals Office in the notice of determination dated September 10, 2002.

For purposes of section 7430, a court proceeding means any civil action brought in a court of the United States, including this Court, sec. 7430(c)(6), and the "position of the United States" in a court proceeding means the position taken by the United States in a judicial proceeding to which section 7430(a) applies, sec. 7430(c)(7)(A). In this case, respondent's litigating position is that taken in his answer to petitioner's petition. See Huffman v. Commissioner, 978 F.2d 1139, 1148 (9th Cir. 1992), affg. in part, revg. in part and remanding T.C. Memo.

1991-144; <u>Maggie Mgmt. Co. v. Commissioner</u>, 108 T.C. 430, 442 (1997).

Although respondent's administrative and litigation positions are often considered separately, we may consider them together if respondent maintains the same position throughout the administrative and litigation process. <u>Huffman v. Commissioner</u>, <u>supra</u> at 1144-1147; <u>Maggie Mgmt. Co. v. Commissioner</u>, <u>supra</u> at 442; <u>Livingston v. Commissioner</u>, T.C. Memo. 2000-387. In the present case, respondent's position in both the notice of determination and the answer was that petitioner's election to allocate the joint liability under section 6015(c) was invalid because she had actual knowledge when she signed the returns of any items giving rise to the deficiency that were allocable to her spouse.

The Commissioner's position is substantially justified if it has a reasonable basis in both fact and law and is justified to a degree that could satisfy a reasonable person. <u>Huffman v. Commissioner</u>, <u>supra</u> at 1147 n.8 (citing <u>Pierce v. Underwood</u>, 487 U.S. 552, 565 (1988)); <u>Maggie Mgmt. Co. v. Commissioner</u>, <u>supra</u> at 443; sec. 301.7430-5(c)(1), Proced. & Admin. Regs. The reasonableness of respondent's position turns on the available facts that formed the basis for the position and any legal precedents related to the case. <u>Maggie Mgmt. Co. v. Commissioner</u>, <u>supra</u> at 443; <u>DeVenney v. Commissioner</u>, 85 T.C.

927, 930 (1985). A significant factor in determining whether the Commissioner's position is substantially justified as of a given date is whether, on or before that date, the taxpayer has presented all relevant information under the taxpayer's control and relevant legal arguments supporting the taxpayer's position to the appropriate Service personnel.[7] Maggie Mgmt. Co. v. Commissioner, supra at 443; sec. 301.7430-5(c)(1), Proced. & Admin. Regs.

The only issue petitioner raises in her motion is whether respondent's position with respect to section 6015(c) was substantially justified. In deciding whether to award administrative and litigation costs, therefore, we focus our analysis on the reasonableness of respondent's position with respect to section 6015(c).

---

[7]"[A]ppropriate Internal Revenue Service personnel" are those employees who are reviewing the taxpayer's information or arguments, or employees who, in the normal course of procedure and administration, would transfer the information or arguments to the reviewing employees. Sec. 301.7430-5(c)(1), Proced. & Admin. Regs.

1.   Section 6015(c)

Under section 6015(c), if the requesting spouse is no longer married to,[8] or is legally separated from, the spouse with whom she filed the joint return, the requesting spouse may elect to limit her liability for a deficiency as provided in section 6015(d).  Sec. 6015(c)(1), (3)(A)(i)(I).  The election under section 6015(c) must be made no later than 2 years after the Secretary[9] has begun collection activities with respect to the electing spouse.  Sec. 6015(c)(3)(B).

In general, section 6015(d) provides that any item giving rise to a deficiency on a joint return shall be allocated to each spouse as though they had filed separate returns, and the requesting spouse shall be liable only for her proportionate share of the deficiency that results from such allocation.  Sec. 6015(d)(1), (3)(A).  To the extent that the item giving rise to the deficiency provided a tax benefit on the joint return to the other spouse, the item shall be allocated to the other spouse in

---

[8]A requesting spouse is no longer married if she is widowed. Rosenthal v. Commissioner, T.C. Memo. 2004-89.

[9]The term "Secretary" means "the Secretary of the Treasury or his delegate", sec. 7701(a)(11)(B), and the term "or his delegate" means "any officer, employee, or agency of the Treasury Department duly authorized by the Secretary of the Treasury directly, or indirectly by one or more redelegations of authority, to perform the function mentioned or described in the context", sec. 7701(a)(12)(A).

computing his or her proportionate share of the deficiency.[10]
Sec. 6015(d)(3)(B); Hopkins v. Commissioner, 121 T.C. 73, 83-86
(2003).

An election under section 6015(c) is invalid, however, if
the Secretary demonstrates that the requesting spouse had actual
knowledge, when signing the return, of any item giving rise to a
deficiency that is otherwise allocable to the nonrequesting
spouse.[11]  Sec. 6015(c)(3)(C).  In cases involving erroneous
deductions, an individual is deemed to have actual knowledge of
an item giving rise to a deficiency if she has actual knowledge
of the factual basis for the denial of the deductions.  King v.
Commissioner, 116 T.C. 198, 204 (2001).  Although the requesting
spouse bears the burden of proving the portion of the deficiency
that is properly allocable to her, see sec. 6015(c)(2),
respondent bears the burden of proving that the requesting spouse
had actual knowledge of any items giving rise to the deficiency,
sec. 6015(c)(3)(C).

---

[10]In addition, the requesting spouse's proportionate share
of the deficiency shall be increased by the value of any
disqualified asset transferred to her by the nonrequesting
spouse.  Sec. 6015(c)(4).

[11]An election under sec. 6015(c) is also invalid if the
Secretary demonstrates that assets were transferred between the
individuals filing the joint return as part of a fraudulent
scheme.  Sec. 6015(c)(3)(A)(ii).

2.   Reasonableness of Respondent's Position

Respondent contends that the Appeals Office's position in the notice of determination was substantially justified because the information available to the Appeals officer at the time led her to believe that petitioner had actual knowledge and because no allocation of the Hoyt partnership items could be made given petitioner's contention that all of the items were attributable to Mr. Foy.  Respondent also contends that the position of the Appeals Office was reasonable because the Appeals officer had no information available from which she could determine whether any disqualified assets within the meaning of section 6015(c)(4) had been transferred to petitioner and whether any assets had been transferred between petitioner and Mr. Foy as part of a fraudulent scheme.  Sec. 6015(c)(3)(A)(ii).

Respondent further argues that, as of the date of his answer, "The information then available to respondent showed that petitioner had knowledge of and had been involved with the Hoyt organization to some degree."  Respondent also argues that "At the time this case was answered, the deficiencies in issue could not be allocated between petitioner and her former spouse under section 6015(d) because the parties disagreed about whether and to what extent the investment in SGE 1984-3 was attributable to petitioner."  Respondent maintains that it was impossible to determine with certainty whether petitioner had actual knowledge

of any item giving rise to the deficiency without further factual development.

We reject respondent's justification for his administrative and litigation position for several reasons. First, although respondent argues that petitioner did not present all relevant information under her control on or before the date the notice of determination was issued, the record for purposes of this motion establishes otherwise. In a protest letter dated September 26, 2001, appealing the Service's denial of any relief under section 6015, petitioner stated that she had no actual knowledge of the items giving rise to the liabilities in question[12] and provided respondent a detailed statement of the facts supporting her argument that she was entitled to relief under section 6015(c), which included a citation to our opinion in King v. Commissioner, supra at 204. Petitioner also offered to provide any additional information that the Service might require. In a subsequent letter dated July 22, 2002, to Appeals Officer Brush, petitioner provided an even more detailed explanation of why she believed she qualified for relief under section 6015(c). She reiterated her position that she had no actual knowledge at the time she signed the relevant returns of the items giving rise to the

---

[12]A party's statement, if credible, is evidence on which the finder of fact may rely to establish a relevant fact. In this case, there is nothing in the record to suggest that petitioner's statement regarding her lack of actual knowledge was not credible.

deficiency, reminded Appeals Officer Brush that the Commissioner had the burden of proving actual knowledge, and cited the Opinion of this Court in Mora v. Commissioner, 117 T.C. 279 (2001), in support of her position that she was entitled to relief under section 6015(c). Petitioner also stated that there was no fraudulent transfer of any assets and reiterated her offer to provide any additional information that the Appeals Office might require.

The Appeals Office issued its notice of determination approximately 2 months later. The record does not disclose any effort by the Appeals Office to request any additional factual information from petitioner or to pose any questions to petitioner after the July 22, 2002, letter and before the notice of determination was issued on September 10, 2002. Respondent had an opportunity to obtain any additional information he felt he needed during the administrative proceeding, but he did not request any additional information from petitioner until the discovery phase of this case. Respondent's claim, in response to petitioner's motion, that he did not have sufficient information when he filed his answer and that the lack of information was somehow petitioner's fault is not sufficient justification for respondent's litigating position under the circumstances. See Powers v. Commissioner, 100 T.C. 457, 473 (1993) (Commissioner's position was not substantially justified because it had no

factual basis, and Commissioner made no attempt to obtain relevant information before adopting his position), affd. in part, revd. in part, and remanded in part 43 F.3d 172 (5th Cir. 1995).

Second, in determining that petitioner had actual knowledge, respondent failed to evaluate properly the standard for actual knowledge articulated in King v. Commissioner, 116 T.C. 198 (2001), and Mora v. Commissioner, supra, in light of the extensive information he had acquired regarding the operation of the Hoyt partnerships. When the notice of determination was issued on September 10, 2002, the Service had already entered into a settlement agreement with Mr. Hoyt and was well aware of the basis for adjusting the Hoyt partnership items at issue in this case. See River City Ranches #1, Ltd. v. Commissioner, T.C. Memo. 2003-150; affd. in part, revd. in part and remanded 401 F.3d 1136 (9th Cir. 2005); Mekulsia v. Commissioner, T.C. Memo. 2003-138, affd. 389 F.3d 601 (6th Cir. 2004); Durham Farms #1 J.V. v. Commissioner, T.C. Memo. 2000-159, affd. 59 Fed. Appx. 952 (9th Cir. 2003); Shorthorn Genetic Engg. 1982-2, Ltd. v. Commissioner, T.C. Memo. 1996-515; Bales v. Commissioner, T.C. Memo. 1989-568. Moreover, it was a matter of public record as of September 10, 2002, that Mr. Hoyt had overstated the number and

value of cattle sold to the partnerships.  See, e.g., Mora v. Commissioner, supra at 292.[13]

In King v. Commissioner, supra at 204, we held that "the proper application of the actual knowledge standard in section 6015(c)(3)(C), in the context of a disallowed deduction, requires respondent to prove that petitioner had actual knowledge of the factual circumstances which made the item unallowable as a deduction."  In other words, respondent had to prove that petitioner knew the Hoyt organization had an insufficient number of cattle to sustain the partnership deductions claimed on the joint return and knowingly claimed improper deductions.  Nothing in the record indicates, however, that respondent made any reasonable effort to identify the grounds for the disallowance of the Hoyt partnership losses and credits petitioner and Mr. Foy claimed, or to evaluate his ability to prove that petitioner had actual knowledge of the factual circumstances that caused the disallowance of the Hoyt partnership items before taking his position in this case.  Respondent should have meaningfully evaluated whether he could prove that petitioner had actual knowledge by taking into account the information supplied by petitioner, the extensive audit and litigating history regarding the Hoyt organization and the Hoyt partnerships, and the specific

---

[13]By Sept. 10, 2002, Mr. Hoyt had been indicted, convicted, and sentenced for his fraudulent activities with respect to the Hoyt partnerships.

information regarding the manner in which the Hoyt organization operated the Hoyt partnerships, including the ones in which petitioner and Mr. Foy had invested. The record does not indicate that respondent considered any of the information that was available to him in September 2002 before adopting his administrative position. Respondent's failure to properly apply the actual knowledge standard in the context of the information he had acquired regarding Mr. Hoyt and the Hoyt organization in this case cannot be rationalized. Respondent's lack of diligence in evaluating his ability to prove actual knowledge, therefore, was not justified. See Stieha v. Commissioner, 89 T.C. 784, 791 (1987) (Commissioner's lack of diligence in evaluating the impact of recent court opinions not substantially justified).

Third, the record discloses no meaningful effort on the part of respondent to properly analyze section 6015(c) with respect to the position, as determined by respondent, that petitioner and Mr. Foy had invested jointly in the Hoyt partnerships. In an "EXPLANATION OF ITEMS" attached to the Appeal Transmittal Memorandum and Appeals Case Memo that was prepared with respect to petitioner's section 6015 request, the Appeals Office took the position that "Joint investments in the tax shelter partnerships are considered actual knowledge and an erroneous item attributable to both spouses" and determined that in the present case: "The taxpayers were into the tax shelter jointly. The

erroneous item is attributable to both." In addition, respondent admitted in the notice of determination and in his response to petitioner's motion that the facts available to him suggested that the Foys invested jointly in the Hoyt partnerships. Nevertheless, respondent failed to consider how the deficiencies could be allocated between petitioner and her spouse under section 6015(c) and (d) if respondent's position regarding their joint investment was correct. If respondent had made the allocation that flowed naturally from his position that the Foys had invested jointly in the Hoyt partnership, he would necessarily have allocated the Hoyt partnership items between petitioner and Mr. Foy in accordance with their respective ownership interests. Respondent also likely would have realized that he had to prove that petitioner had actual knowledge of the reasons for disallowing Mr. Foy's allocable share of the Hoyt partnership items in order for him to conclude that petitioner was not entitled to any section 6015(c) relief. Respondent's failure to make an allocation under section 6015(c) further demonstrates that his position was unreasonable.

The fourth flaw in respondent's position stems from his failure to make a computation under section 6015(c) and (d) to reflect his contention that the Foys' partnership interest in SGE 1984-3 was jointly owned. Had respondent done so, the resulting calculation would have shown substantially reduced tax

liabilities owed by petitioner after application of section
6015(c) and (d) and would have confirmed that petitioner
qualified for section 6015(c) relief.[14]  If respondent had then
conceded that petitioner was entitled to section 6015(c) relief
in the notice of determination or in his answer, the concession
would have enabled the parties to settle this case at a much
earlier date.[15]

### 3.  Conclusion

We hold that respondent's litigating position was not
reasonable under the circumstances and that, therefore, it was
not substantially justified.  Because respondent's administrative
and litigating positions were not substantially justified, we

---

[14]Although respondent's calculation would not have arrived
at the same tax liability numbers as those reflected in the
settlement because of respondent's interpretation of sec.
6015(d)(3)(B), see Hopkins v. Commissioner, 121 T.C. 73 (2003),
the computation would nevertheless have confirmed that petitioner
was entitled to sec. 6015(c) relief.  When our opinion in Hopkins
v. Commissioner, supra, rejecting respondent's interpretation of
sec. 6015(d)(3)(B), was filed on July 29, 2003, respondent had
reason to know that the application of the tax benefit rule of
sec. 6015(d)(3)(B) might increase the relief available to
petitioner under sec. 6015(c).  If respondent had revised his
calculation at that time (approximately 5 months after his answer
was filed), he would have arrived at the same tax liabilities as
those reflected in the settlement.

[15]The fact that respondent eventually conceded that
petitioner was entitled to proportionate relief under sec.
6015(c) is a factor we may consider, although it is not
determinative, in deciding whether respondent's position was
substantially justified.  Maggie Mgmt. Co. v. Commissioner, 108
T.C. 430 (1997); Powers v. Commissioner, 100 T.C. 457, 471 (1993)
affd. in part, revd. in part, and remanded in part 43 F.3d 172
(5th Cir. 1995).

conclude that petitioner was the prevailing party as defined by section 7430(c)(4)(A).

B.  Reasonableness of Costs Claimed

    1.  Amount of Costs Claimed

Section 7430 permits a taxpayer to recover both reasonable administrative costs[16] and reasonable litigation costs[17].  The amount of reasonable attorney's fees that we may award is limited by statute and adjusted for cost of living.[18]  Sec. 7430(c)(1)(B)(iii) (and flush language).  A taxpayer may recover attorney's fees in excess of the statutory limit in the presence of one or more of the following special factors:  (1) Limited availability of qualified attorneys for the proceeding, (2)

---

[16]Sec. 7430(c)(2) defines reasonable administrative costs to mean the expenses, costs, and fees described in sec. 7430(c)(1)(B) incurred on or after the earliest of the date of the receipt by the taxpayer of the notice of decision of the Appeals Office, the date of the notice of deficiency, or the date on which the first letter of proposed deficiency that allows the taxpayer the opportunity for administrative review by the Appeals Office is sent.

[17]Sec. 7430(c)(1) defines reasonable litigation costs to include, among other things, reasonable court costs and reasonable fees paid or incurred for the services of attorneys in connection with the court proceeding (attorney's fees). Attorney's fees are limited by statute and adjusted for cost of living.  Sec. 7430(c)(1)(B)(iii) (and flush language).

[18]Rev. Proc. 2001-59, 2001-2 C.B. 623, 628; Rev. Proc. 2002-70, 2002-2 C.B. 845, 850; and Rev. Proc. 2003-85, 2003-2 C.B. 1184, 1190, respectively, provide that, for fees incurred in calendar years 2002-2004, the attorney fee award limitation under sec. 7430(c)(1)(B)(iii) is $150 per hour.

difficulty of the issues presented in the case, or (3) local availability of tax expertise.  Id.

Pursuant to Rule 232(d), if the parties disagree as to the amount of attorney's fees that is reasonable, the moving party must submit an additional affidavit that includes, in relevant part, the following:  (1) A detailed summary of the time expended by each individual for whom fees are sought, including a description of the nature of the services performed during each period of time; (2) a description of the fee arrangement with the client; (3) a statement of whether a special factor exists that justifies a rate in excess of the statutory limit; and (4) any other information that will assist the Court in evaluating the award of costs and fees.

The amount of petitioner's claim for administrative and litigation costs includes the cost of professional services that were charged by her attorneys to her individual account and her share of group fees that were charged to common accounts for the benefit of several Hoyt investor clients, including petitioner. The fees and costs petitioner claims are summarized as follows:

| Attorney/Item | Time expended | Hourly rate | Total cost |
|---|---|---|---|
| Wendy Pearson | 8.8 hours | $195 | $1,716.00 |
| Terri Merriam | 2.9 hours | 195 | 565.50 |
| Jennifer Gellner | 10.5 hours | 150 | 1,575.00 |
| Jennifer Gellner | 2.1 hours | 110 | 231.00 |
| Legal assistant | 10.3 hours | 75 | 772.50 |
| Contract assistance | 10.0 hours | 50 | 500.00 |
| Tax Court filing fee | -- | -- | 60.00 |
| Postage | -- | -- | 5.84 |
| Online research | -- | -- | 12.00 |
| Share of group fees and costs[1] | -- | -- | 5,916.20 |
| Total fees and costs | | | 11,354.04 |

[1]The amount petitioner claims for her share of the group fees and costs represents charges to separate accounts for two groups of Hoyt investor clients and includes attorney's fees billed at an hourly rate of $195 for some of petitioner's attorneys and the costs of contract assistance, online research, postage, copies, and the attorneys' hotels, meals, and parking as well as the costs of work performed by legal assistants.

2. The Parties' Arguments

Respondent contends that the costs petitioner claims are unreasonable in that the hourly rate charged by some of petitioner's attorneys exceeds $150 per hour, and petitioner has not shown that any of the three special factors enumerated in section 7430(c)(1)(B)(iii) apply. Respondent further argues that costs petitioner claims for her share of the group fees are not reasonable because (1) the method of billing does not properly account for the time expended or hourly rate at which the work was performed, and (2) the fees were charged for work that contributed to the resolution of clients' cases other than petitioner's and, therefore, were not "incurred in connection

"with" petitioner's administrative and court proceedings as required by section 7430(a).

Petitioner contends that an "informal survey" of local attorneys shows that the prevailing hourly rate for attorneys specializing in Federal tax practice in the Seattle, Washington, area is between $225 and $350 and that billing at an hourly rate that is less than the customary rate for similar work is a factor that supports the reasonableness of the attorney's fees. With respect to her share of the group fees, petitioner contends that the group fees were charged to a group of Hoyt investor clients, all of whom had pending section 6015 claims, for work relating to common legal and factual issues that directly affected or contributed to the resolution of each client's case. Petitioner's counsel further contend that the group fee arrangement allowed the Hoyt investor clients to obtain professional advice and assistance at a reduced cost, that any services related to the development of factual issues unique to a particular client were charged only to the individual client, and that no client was charged for work that did not directly benefit the client's case.

### 3. Hourly Rate

We first decide whether the hourly rate for the attorney's fees is reasonable. In the absence of proof that a special factor applies, petitioner may not recover attorney's fees in

excess of the statutory limit.  See sec. 7430(c)(1)(B)(iii).
Petitioner does not argue, and has otherwise failed to
demonstrate, that there was a limited availability of qualified
attorneys or of attorneys with tax expertise to represent her in
this case or that the issues presented were sufficiently
difficult to support her claim for an enhanced hourly rate.  The
fact that petitioner's attorneys billed her and the other Hoyt
investor clients for professional services at a rate lower than
the local customary rate does not establish that the fees
petitioner claims are reasonable.[19]  We conclude, therefore, that
petitioner may not recover attorney's fees in excess of $150 per
hour.  Id.

With respect to the attorney's fees and costs charged to
petitioner's individual account, we award petitioner $1,320 for
work performed by Ms. Pearson[20] and $435 for work performed by Ms.
Merriam.[21]  Because Ms. Gellner's hourly rate does not exceed the
statutory limit, we find that her fees are reasonable and award
petitioner $1,806 for Ms. Gellner's professional services.

---

[19]The existence of a prevailing hourly rate in the relevant
area that exceeds the statutory rate is not a special factor.
Pierce v. Underwood, 487 U.S. 552, 571-572 (1988); Foothill Ranch
Co. Pship. v. Commissioner, 110 T.C. 94, 102 (1998).

[20]We compute the award of Ms. Pearson's fees as follows:
8.8 hours multiplied by $150 hourly rate equals $1,320.

[21]We compute the award of Ms. Merriam's fees as follows:
2.9 hours multiplied by $150 hourly rate equals $435.

Respondent does not object to the reasonableness of the costs petitioner claims for the services of legal assistants, contract assistance, filing fees, postage, and online research that were charged to her individual account. Consequently, we award petitioner those costs in the amount of $1,350.34.[22]

### 4. Allocation of Group Fees

We next decide whether the attorney's fees and costs for petitioner's share of the group fees are reasonable and were reasonably allocated among petitioner and the other Hoyt investor clients. Section 7430(a) authorizes an award of reasonable administrative and litigation costs incurred in connection with an administrative or court proceeding brought by or against the United States with respect to the determination, collection, or refund of any tax. In order for costs, including attorney's fees, to qualify as reasonable litigation or administrative costs, they must come within the relevant definitions, sec. 7430(c)(1) and (2), and they must be incurred in connection with a qualifying proceeding.

---

[22]This figure includes the following costs: $772.50 for legal assistants, $500 for contract assistance, $60 Tax Court filing fee, $5.84 for postage, and $12 for online research.

Only costs for the services of an individual who is admitted to practice before this Court or the Internal Revenue Service may be awarded as attorney's fees. Sec. 7430(c)(3)(A). We award fees for work performed by legal assistants, therefore, as costs, rather than as attorney's fees. See Fields v. Commissioner, T.C. Memo. 2002-320; O'Bryon v. Commissioner, T.C. Memo. 2000-379.

Petitioner's attorneys represent many Hoyt investors. It is not surprising or unreasonable that they would perform certain legal work for the common benefit of similarly situated clients. Under certain circumstances, it may be both efficient and economical for an attorney to allocate the fees and costs for legal research and other legal work benefiting several clients equitably among those clients as long as the clients agree, the fees and costs are reasonable, and the attorney appropriately allocates the common legal work. See, e.g., Minahan v. Commissioner, 88 T.C. 516 (1987), and Minahan v. Commissioner, 88 T.C. 492 (1987), in which we allocated common costs among several taxpayers who were represented by the same attorneys under an agreement that provided for the sharing of costs. Moreover, legal work that benefits multiple clients is no less relevant to an administrative or court proceeding than work performed solely for one client. If the work is performed for multiple clients and enables an attorney to properly represent a particular client in the administrative or court proceeding described in section 7430, the section 7430(a) requirement that the costs for such work are "incurred in connection with" the proceeding would appear to be satisfied.

Petitioner's counsel produced billing records for accounts of two Hoyt investor client groups seeking relief from joint and several liability to substantiate petitioner's share of the group

fees.  The billing records for both group accounts identify the attorneys who performed work on the innocent spouse cases and set forth the time expended by each attorney, the attorneys' hourly rates, and the nature of the work performed.[23]  Petitioner's counsel contend in their supporting declarations that one group of Hoyt investors (the general group) ranged in size from 97 to 75 members during the 14-month period that petitioner participated in the group fee arrangement and that petitioner's pro rata share of the general group's fees was computed by dividing the total monthly charges equally among all members of the group.  Petitioner's counsel further contend that there existed a separate group of nine Hoyt investors, including petitioner (the litigation group), whose cases were set for trial during the Court's February 2004 trial session, and that the nine Hoyt investors shared the total billing costs of trial preparation equally, with the exception of approximately 15 hours that were allocated among the general group.  In addition, petitioner's counsel produced a spreadsheet demonstrating how the total monthly fees incurred by the general group of Hoyt investor clients in January 2004 were divided equally among petitioner and the other participants.

---

[23]The billing records of the general group's account appear to be missing the first page of charges for April 2003 and pages in March and December 2003, including monthly summary pages of the total charges for March and December 2003.  See infra note 26.

After reviewing the record, we conclude that petitioner has benefited from the work her attorneys performed for both groups of Hoyt investor clients and is entitled to recover a reasonable share of the fees and costs she incurred as a member of each group. With respect to the litigation group of Hoyt investor clients, we award petitioner $3,577.22, which represents a one-ninth share of the attorney's fees adjusted to an hourly rate of $150 and costs.[24]

Petitioner's attempt to recover her allocable portion of the general group's fees and costs, however, is problematic in that the information petitioner provided does not enable us to evaluate the reasonableness of the group fees or the

---

[24]We compute petitioner's share of the litigation group's fees and costs as follows: $37,667 (total fees and costs incurred by litigation group), minus $13,962 (work performed by attorneys at $195 hourly rate), plus $10,740 (total attorney's fees incurred at $195 hourly rate adjusted to hourly rate of $150), minus $2,250 (15 hours of work performed at an hourly rate of $150), divided by 9 (members of litigation group), equals $3,577.22.

We subtracted 15 hours of work performed at an hourly rate of $150 in computing the total amount of fees and costs incurred by the litigation group because petitioner's counsel stated that approximately 15 billable hours shown on the billing records of the litigation group's account were actually charged to the members of the general group. Because petitioner's counsel have failed to identify the nature of the work or hourly rate for those 15 hours, we assume that they were billed at the highest hourly rate allowed. Further, we do not add any charges for the 15 hours to the total costs and fees incurred by the general group of Hoyt investors in computing petitioner's share of that group's fees and costs because we lack any information about the 15 hours of work performed.

reasonableness of the allocation. The composition of the general group of Hoyt investors varied from month to month as clients chose to dismiss their claims or became widowed or divorced and sought relief only under section 6015(c). Because the billing records for both petitioner's and the general group's accounts lack any factual detail regarding the number of Hoyt investor clients who participated in the fee arrangement in each of the relevant months, it is impossible to verify that the generic monthly charges for group fees that appear on the records for petitioner's individual account are reasonable and were reasonably allocated among petitioner and the other Hoyt investors clients.[25]

Petitioner bears the burden of proving that the amount of the costs claimed is reasonable. Rule 232(e); Powers v. Commissioner, 100 T.C. at 491. We conclude that because petitioner has failed to fully substantiate her claim for a share of the general group's fees, she is entitled to recover only a portion of the amount she claims. For purposes of computing the amount petitioner is entitled to recover, we shall assume that the composition of the general group of Hoyt investor clients

---

[25]Had petitioner produced documentation for each month that showed the number of clients who shared the fees, such as a spreadsheet similar to that produced for the January 2004 fee allocation, we could have properly determined whether the amount of costs petitioner claims was reasonable.

remained constant at its greatest size, 97, throughout the 14-month period that petitioner participated in the group fee arrangement.  Accordingly, we award petitioner $2,301.95, which represents a one-ninety-seventh share of the general group's attorney's fees adjusted to an hourly rate of $150 and costs.[26]

---

[26]Although the billing records submitted for the general group's account were incomplete, see supra note 23, we were able to construct a complete set of billing records based on the records submitted in related cases involving motions for litigation costs that were filed by other members of the general group of Hoyt investors.  See Bulger v. Commissioner, docket No. 3829-03; Owen v. Commissioner, T.C. Memo. 2005-115.  We take judicial notice of the records submitted in these related cases for purposes of computing the amount we award petitioner for her share of the general group's fees and costs.  We compute petitioner's share of the general group's fees and costs as follows:  $256,031.11 (total fees and costs incurred by general group of Hoyt investors), minus $141,882 (attorney's fees incurred at hourly rate of $195), plus $109,140 (total attorney's fees incurred at $195 hourly rate adjusted to hourly rate of $150), divided by 97 (members of Hoyt investor group), equals $2,301.95.

5.  Conclusion

To summarize, we award petitioner the following attorney's fees and costs:[27]

| Attorney/Item | Time expended | Hourly rate | Total cost |
|---|---|---|---|
| Wendy Pearson | 8.8 hours | $150 | $1,320.00 |
| Terri Merriam | 2.9 hours | 150 | 435.00 |
| Jennifer Gellner | 10.5 hours | 150 | 1,575.00 |
| Jennifer Gellner | 2.1 hours | 110 | 231.00 |
| Costs | -- | -- | 1,350.34 |
| Share of group fees and costs[1] | -- | -- | 5,879.17 |
| Total fees and costs awarded | | | 10,790.51 |

[1]Petitioner's award for her Share of Group Fees and Costs includes $3,577.22 (share of fees from litigation group of Hoyt investors), and $2,301.95 (share of fees from general group of Hoyt investors).

C.  Conclusion

We have carefully considered all remaining arguments made by the parties for results contrary to those expressed herein, and, to the extent not discussed above, we find those arguments to be irrelevant, moot, or without merit.

---

[27]Respondent does not contend that the fees and costs at issue here must be traced and allocated to the various positions taken by the parties under sec. 6015, nor does he contend that his positions under sec. 6015(b) and (f) were substantially justified.  Moreover, respondent's failure to timely and properly evaluate petitioner's sec. 6015(c) argument, in our view, was responsible for the legal work expended on arguments for relief under sec. 6015(b) and (f).  Consequently, we have not attempted to allocate the fees and costs to the various arguments made by the parties under sec. 6015.

To reflect the foregoing,

An appropriate order and
decision will be entered.
