T.C. Memo. 2005-115

UNITED STATES TAX COURT

BARBARA A. OWEN, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 18856-02.                    Filed May 19, 2005.

Terri A. Merriam, Wendy S. Pearson, and Jennifer A. Gellner,
for petitioner.

Robert V. Boeshaar and Julie L. Payne, for respondent.


MEMORANDUM OPINION

MARVEL, Judge:  This case is before the Court on
petitioner's motion for reasonable administrative and litigation
costs (motion) pursuant to section 7430 and Rule 231.[1]

_____

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect at the time the petition was
filed, and all Rule references are to the Tax Court Rules of
(continued...)

Petitioner resided in Kennewick, Washington, when her petition in this case was filed.

On May 10, 2004, we filed the parties' stipulation of settlement and petitioner's motion.  On August 5, 2004, we filed respondent's response to petitioner's motion.  On September 15, 2004, we filed petitioner's reply to respondent's response and an additional declaration in support of the reply.  On December 6, 2004, we ordered petitioner to submit an additional declaration and supporting documentation to support the reasonableness of the costs claimed.  On January 10, 2005, we received and filed petitioner's supplemental declaration, and on January 28, 2005, we received and filed respondent's supplemental response to petitioner's supplemental declaration.

Neither party requested a hearing, and after reviewing the relevant documents, we have concluded that a hearing on the motion is not necessary.  See Rule 232(a)(2).  In disposing of this motion, we rely on the parties' filings and attached exhibits.

## Background

In 1986, petitioner and her husband, Melvin L. Owen, invested in a partnership called Timeshare Breeding Service 1985-4, Ltd., also referred to as Durham Genetics Engineering 1985-4,

---

[1](...continued)
Practice and Procedure.

Ltd. (hereinafter DGE), which had been organized, promoted, and operated by Walter J. Hoyt III.[2] Petitioner and Mr. Owen held partnership interests either jointly or as tenants in common in three separate "series" of DGE partnership units. Petitioner wrote and signed numerous checks payable to DGE or the Hoyt organization from her and Mr. Owen's joint bank account and wrote and signed several other checks drawn on her own account to maintain their investment in DGE. DGE issued Schedules K-1, Partner's Share of Income, Credits, Deductions, etc., for 1987 to 1995, which reflected that both petitioner and Mr. Owen were partners in DGE. In addition, in 1992, petitioner and Mr. Owen signed a Power of Attorney and Debt Assumption Agreement in which

---

[2]Walter J. Hoyt III also organized, promoted, operated, and served as the general partner of more than 100 livestock breeding limited partnerships from 1971 through 1998. See, e.g., River City Ranches #1, Ltd. v. Commissioner, T.C. Memo. 2003-150, affd. in part, revd. in part and remanded 401 F.3d 1136 (9th Cir. 2005). In general, the Hoyt partnerships purchased livestock from related Hoyt entities for no money down and a promissory note. See, e.g., Durham Farms #1, J.V. v. Commissioner, T.C. Memo. 2000-159, affd. 59 Fed. Appx. 952 (9th Cir. 2003); Shorthorn Genetic Engg. 1982-2, Ltd. v. Commissioner, T.C. Memo. 1996-515. The investors in the Hoyt partnerships assumed personal liability for the partnerships' promissory notes, made payments on the notes to the Hoyt partnerships, see, e.g., Shorthorn Genetic Engg. 1982-2, Ltd. v. Commissioner, supra, and, in return, deducted large partnership losses related to the purchase, management, and sale of livestock, see River City Ranches #1, Ltd. v. Commissioner, supra; Mekulsia v. Commissioner, T.C. Memo. 2003-138, affd. 389 F.3d 601 (6th Cir. 2004); Durham Farms #1, J.V. v. Commissioner, supra; Shorthorn Genetic Engg. 1982-2, Ltd. v. Commissioner, supra; Bales v. Commissioner, T.C. Memo. 1989-568.

they appointed Mr. Hoyt to act on their behalf with regard to partnership matters and reaffirmed their prior debt assumption agreement with the Hoyt partnership.

Petitioner and Mr. Owen filed joint Federal income tax returns for 1982 through 1996 on which they claimed substantial losses and an investment credit related to their DGE investment. The DGE deductions and credits claimed by the Owens significantly reduced their taxable income and overall Federal income tax liabilities for 1982 through 1996. As a result of our decision in Shorthorn Genetic Engg. 1982-2, Ltd. v. Commissioner, T.C. Memo. 1996-515, on July 18, 1997, petitioner and Mr. Owen entered into a closing agreement with respondent concerning the tax consequences of the DGE investment, which resulted in income tax deficiencies for 1982 through 1995.[3]

On April 29, 2000, Mr. Owen died. On or about July 21, 2000, petitioner submitted Form 8857, Request for Innocent Spouse Relief (And Separation of Liability and Equitable Relief), on which she requested relief from joint and several liability for 1982 to 1997. Petitioner attached a supporting statement to the request in which she represented that she was not involved in the DGE investment and did not financially benefit from it. Petitioner argued that she met each requirement of section

---

[3]Under the closing agreement, petitioners were not liable for any deficiencies in income tax for 1996 or 1997.

6015(b) and, in particular, that she had no knowledge or reason to know of the understatement attributable to the Hoyt partnership items on the joint returns. Petitioner further alleged that she was entitled to an allocation of liability under section 6015(c) because she was no longer married, did not have actual knowledge of any items giving rise to the deficiency when she signed the returns, and all of the items giving rise to the deficiency were allocable to Mr. Owen because he made the decision to invest in DGE. Petitioner also argued that she was entitled to equitable relief under section 6015(f).

On August 28, 2001, respondent sent petitioner a preliminary determination denying petitioner's request for relief under section 6015(b), (c), and (f). In the Form 886-A, Explanation of Items, attached to the preliminary determination, respondent explained the denial of relief under section 6015(c) as follows:

> We have concluded that you had actual knowledge of the item giving rise to the understatement. The following factors were considered in reaching this conclusion:
>
> - You signed one or more partnership/subscription agreements/powers of attorney with respect to the Hoyt partnerships.
>
> - You signed personal checks made payable to W.J. Hoyt Sons or other Hoyt entity [sic].
>
> - You signed other correspondence/documents relating to the Hoyt partnerships.
>
> - You are not eligible for relief under section 6015(c) with respect to your own erroneous items and you have not shown that the

erroneous items are attributable to your
spouse.

Respondent advised petitioner of her right to administratively appeal the decision but did not offer petitioner an Appeals conference.

On or about September 14, 2001, petitioner administratively appealed respondent's denial of relief from joint and several liability. Petitioner filed Form 12509, Statement of Disagreement, in which she summarized the facts and law in support of her request for relief. Petitioner maintained that all of the partnership items on the returns were items properly allocable to her spouse for purposes of section 6015(c) and reiterated the reasons why she did not have actual knowledge of any items giving rise to the deficiency. In addition, petitioner stated that the burden of proof is on the Commissioner to show actual knowledge, and she included a citation to King v. Commissioner, 116 T.C. 198 (2001), which articulates a standard for evaluating actual knowledge in erroneous deduction cases. Petitioner's statement further provided, in relevant part, as follows:

The fact that the electing spouse signed the
partnership agreements, signed checks made payable to
Hoyt, signed correspondence to Hoyt, or acquiesced to a
joint investment with their spouse does not prove that
the electing spouse had actual knowledge that the
claimed items were not allowable. Moreover, the recent
conviction and sentencing of Jay Hoyt shows
affirmatively that the Barbaras [sic] had NO knowledge
of the factual circumstances that made the deductions

unallowable, because Hoyt engaged in a fraudulent scheme to deceive them and it was the fraudulent scheme that caused the tax items to be unallowable. The Hoyt investors were adjudged to be victims of a fraud, which by definition means they were deceived as to the nature of their investment and the facts giving rise to the disallowance of their investment related tax deductions.

The cover letter attached to petitioner's administrative appeal stated that "We will provide additional factual information once we are contacted by the Appeals Officer."

On September 9, 2002, the Appeals Office issued a Notice of Determination Concerning Your Request for Relief Under the Equitable Relief Provision of Section 6015(f) (notice of determination) denying petitioner's request for relief under section 6015. Although the notice of determination referenced only section 6015(f), the explanation of adjustments addressed petitioner's claim for relief under section 6015(b), (c), and (f). The explanation of adjustments stated as follows with respect to petitioner's request for relief under section 6015(c):

### IRC SECTION 6015(c)--Election to Allocate Deficiency

This subsection is commonly called "separation of liability" which prorates a deficiency between spouses filing a joint return based on their proportionate share of earnings. Under this section, the requesting spouse must establish certain conditions before a relief [sic] can be granted. Even if you meet the requirements for being a widow, your request for separation of liability will not be granted because you had actual knowledge or the reason to know of the items giving rise to the deficiency that were allocable to your spouse. [Emphasis added.]

On December 6, 2002, we filed petitioner's timely petition seeking review of respondent's determination pursuant to section 6015(e). In the petition, petitioner alleged, in pertinent part, that respondent erred in concluding that petitioner did not qualify for relief under section 6015(c) and that "Respondent made no effort to prove, and failed to prove, that Petitioner had actual knowledge of the factual circumstances which made the tax items unallowable as a deduction." As she did in her initial request for relief and her administrative appeal, petitioner included an extensive recitation of the facts on which she relied to support her allegations, including the following:

> p. Neither Petitioner nor Mr. Owen had actual knowledge of the underlying problems with the transactions, nor could they have discovered that Jay Hoyt failed to transfer title to livestock to the partnership and that he was otherwise converting partnership assets.

> \* \* \* \* \* \* \*

> q. Due to the complexity of Jay Hoyt's fraud, it was impossible for either Petitioner or Mr. Owen to discover the true nature of the transactions.

> r. Mr. Owen and all other Hoyt investors were deceived by Jay Hoyt as to the nature of their investment and were ultimately determined by a court of law to be victims of his elaborate fraud.

On February 27, 2003, we filed respondent's answer in which he denied each of petitioner's allegations of error. Respondent also denied petitioner's representations in subparagraphs p. and

r. based on lack of knowledge or information and denied the representation in subparagraph q. without qualification.

On February 23, 2004, this case was called for hearing during the Court's Seattle, Washington, trial session. The parties reported that they believed they had reached a basis for settlement, and the case was scheduled for recall on March 2, 2004. At the recall, the parties indicated on the record that they had reached an agreement on the deficiencies but had not settled the issue of penalties. On March 3, 2004, the parties reported that the case had been settled and requested until April 19, 2004, to submit a signed decision document. In addition, the parties agreed that the Court did not have jurisdiction over the proposed addition to tax under section 6651(a)(3), and petitioner stated on the record that she did not concede that the penalty should be imposed.

After issuing an order on April 26, 2004, extending the time for the parties to submit a signed decision document, we filed the parties' signed stipulation of settlement on May 10, 2004. The stipulation of settlement reflected that the parties had agreed to a section 6015(c) allocation with respect to petitioner's and Mr. Owen's Federal income tax liabilities as follows:

| Year | Joint tax liability before allocation | Petitioner's share under sec. 6015(c) |
|------|--------------------------------------|---------------------------------------|
| 1982 | $7,474.15 | -0- |
| 1983 | 7,153.00 | -0- |
| 1984 | 6,778.00 | -0- |
| 1985 | 5,029.00 | $1,398.06 |
| 1986 | 7,190.00 | -0- |
| 1987 | 1,020.00 | -0- |
| 1988 | 3,907.00 | 1,953.50 |
| 1989 | 5,712.00 | 2,856.00 |
| 1990 | 10,957.00 | 5,478.50 |
| 1991 | 9,535.00 | 4,767.50 |
| 1992 | 10,521.00 | 5,260.50 |
| 1993 | 8,330.00 | 4,165.00 |
| 1994 | 13,827.00 | 6,913.50 |
| 1995 | 9,306.00 | 4,653.00 |
| 1996 | -0- | -0- |
| 1997 | -0- | -0- |
|      | 106,739.15 | 37,445.56 |

The allocation of liability under section 6015(c) was made by treating petitioner's and Mr. Owen's DGE investment as a joint investment, allocating 50 percent of the partnership items to petitioner and 50 percent to Mr. Owen in accordance with section 6015(d)(1) and (d)(3)(A), and adjusting the allocation, as required by section 6015(d)(3)(B), to account for the tax benefit that petitioner's share of the partnership items provided to Mr. Owen on the joint returns.  The parties further agreed that petitioner was not entitled to relief from joint and several liability under section 6015(b) or (f).

On May 10, 2004, we received and filed petitioner's motion for litigation and administrative costs.  In her motion, petitioner asserts that she meets all of the requirements under section 7430 to recover administrative and litigation costs in

the amount of $13,314.33. The litigation and administrative costs petitioner claims were computed using an hourly rate of $195 for two of petitioner's attorneys and included a claim of $7,121.37 for petitioner's alleged share of attorney's fees (the group fees) that her attorneys had charged to two groups of similarly situated Hoyt investor clients with pending section 6015 claims. In support of the motion, petitioner's counsel attached billing records for petitioner's account dated September 10, 2002, to April 16, 2004, that described in detail the attorney's fees and costs petitioner incurred individually and contained generic entries[4] denoting monthly charges to petitioner's account for her alleged share of the group fees. Although petitioner alleged that the group fees were reasonable and that her share of the group fees had been reasonably allocated to her, she did not include any supporting information or documentation with respect to the group fees that showed the nature of the work performed, the attorneys' hourly rates, the identity of the person who performed the work, the number of hours billed for the work, the number of Hoyt investor clients who shared in the group fees, or the manner in which the group

---

[4]Although petitioner agrees that the fee summary for her account attached to the motion describes her share of the "Group Innocent Spouse fees" as "flat" fees, petitioner contends that the flat fee reference is simply the way in which the Pearson-Merriam (petitioner's attorneys' law firm) billing program describes sum certain fees. Petitioner's representation is supported by a declaration of petitioner's counsel.

fees were allocated among petitioner and the other Hoyt investor clients of petitioner's attorneys.

On August 5, 2004, we filed respondent's response to petitioner's motion, in which respondent objected to an award of costs. Petitioner requested and was granted leave to file a reply to respondent's response to the motion. On September 15, 2004, we filed petitioner's reply to respondent's response, which included a supplemental declaration but did not provide any detailed information regarding petitioner's counsel's billing and allocation arrangements with respect to the group fees. On December 6, 2004, we ordered petitioner to submit, on or before January 7, 2005, an additional declaration with supporting documentation to support her contention that the group fees were reasonable and had been reasonably allocated and that her share of the group fees was incurred in connection with this matter. In the December 6, 2004, order, we also authorized respondent to submit a supplemental response addressing the information contained in petitioner's supplemental declaration, on or before January 31, 2005.

On January 10, 2005, we received and filed petitioner's supplemental declaration, which contained billing records for fees and costs petitioner's attorneys had charged to common accounts for two separate groups of Hoyt investor clients. The billing records provided specific information about the nature of

the work performed for the benefit of both groups of Hoyt investor clients and included charges to common accounts that were computed using an hourly rate of $195 for two of petitioner's attorneys. On January 28, 2005, we received and filed respondent's supplemental response to petitioner's supplemental declaration.

## Discussion

Section 7430(a) authorizes the award of reasonable administrative and litigation costs to the prevailing party in an administrative or court proceeding brought by or against the United States in connection with the determination of income tax. In addition to being the prevailing party, in order to receive an award of reasonable litigation costs, a taxpayer must exhaust administrative remedies and not unreasonably protract the administrative or court proceeding. Sec. 7430(b)(1), (3). Unless the taxpayer satisfies all of the section 7430 requirements, we do not award costs. Minahan v. Commissioner, 88 T.C. 492, 497 (1987).

Section 7430(c)(4)(A) and (B)(i) provides that a taxpayer is a prevailing party if (1) the taxpayer substantially prevailed with respect to the amount in controversy or the most significant issue or set of issues, (2) the taxpayer meets the net worth requirements of 28 U.S.C. section 2412(d)(2)(B) (2000), and (3) the Commissioner's position in the court proceeding was not

substantially justified.  See also sec. 301.7430-5(a), Proced. & Admin. Regs.  Although the taxpayer has the burden of proving that the taxpayer meets requirements (1) and (2), supra, the Commissioner must show that the Commissioner's position was substantially justified.  See sec. 7430(c)(4)(B)(i); Rule 232(e).

Respondent concedes that petitioner exhausted the available administrative remedies as required by section 7430(b)(1), that petitioner did not unreasonably protract the administrative or court proceedings as required by section 7430(b)(3), and that petitioner meets the net worth requirement of 28 U.S.C. section 2412(d)(2)(B).  In addition, respondent does not dispute that petitioner substantially prevailed with respect to the amount in controversy.  Respondent argues, however, that petitioner is not the prevailing party because respondent's position in the administrative and judicial proceedings was substantially justified and that the costs petitioner claims are unreasonable.

A.   Whether Respondent's Administrative and Litigation Positions
     Were Substantially Justified

For purposes of deciding a motion for reasonable administrative costs, an administrative proceeding is a procedure or action before the Internal Revenue Service (the Service), sec. 7430(c)(5), and the "position of the United States" in an administrative proceeding refers to the position taken by the Service as of the earlier of (i) the date the taxpayer receives the notice of decision of the Internal Revenue Service Office of

Appeals, or (ii) the date of the notice of deficiency, sec. 7430(c)(7)(B); see also sec. 301.7430-3(a), (c), Proced. & Admin. Regs. In the present case, the relevant position is that taken by the Appeals Office in the notice of determination dated September 9, 2002. Sec. 7430(c)(7)(B)(i).

A court proceeding, for purposes of section 7430, means any civil action brought in a court of the United States, including this Court, sec. 7430(c)(6), and the "position of the United States" in a court proceeding is the position taken by the Service in a judicial proceeding to which section 7430(a) applies, sec. 7430(c)(7)(A). In this case, respondent's litigation position is that taken in his answer to petitioner's petition. Sec. 7430(c)(7)(A); see Huffman v. Commissioner, 978 F.2d 1139, 1148 (9th Cir. 1992), affg. in part, revg. in part and remanding T.C. Memo. 1991-144.

Although respondent's administrative and litigation positions are often considered separately, we may consider them together if respondent maintains the same position throughout the administrative and litigation process. Huffman v. Commissioner, supra at 1144-1147; Maggie Mgmt. Co. v. Commissioner, 108 T.C. 430, 442 (1997); Livingston v. Commissioner, T.C. Memo. 2000-387. In the present case, respondent's position in both the notice of determination and the answer was that petitioner's election to allocate the joint liability under section 6015(c) was invalid

because she had actual knowledge when she signed the returns of any items giving rise to the deficiency that were allocable to her spouse.

The Commissioner's position is substantially justified if it has a reasonable basis in both fact and law and is justified to a degree that could satisfy a reasonable person.  Huffman v. Commissioner, supra at 1147 n.8 (citing Pierce v. Underwood, 487 U.S. 552, 565 (1988)); Maggie Mgmt. Co. v. Commissioner, supra at 443; sec. 301.7430-5(c)(1), Proced. & Admin. Regs.  The reasonableness of respondent's position turns on the available facts that formed the basis for the position and any legal precedents related to the case.  Maggie Mgmt. Co. v. Commissioner, supra at 443; DeVenney v. Commissioner, 85 T.C. 927, 930 (1985).  A significant factor in determining whether the Commissioner's position is substantially justified as of a given date is whether, on or before that date, the taxpayer has presented all relevant information under the taxpayer's control and relevant legal arguments supporting the taxpayer's position to the appropriate Service personnel.[5]  Maggie Mgmt. Co. v.

---

[5]"[A]ppropriate Internal Revenue Service personnel" are those employees who are reviewing the taxpayer's information or arguments, or employees who, in the normal course of procedure and administration, would transfer the information or arguments to the reviewing employees.  Sec. 301.7430-5(c)(1), Proced. & Admin. Regs.

Commissioner, supra at 443; sec. 301.7430-5(c)(1), Proced. &
Admin. Regs.

The only issue petitioner raises in her motion is whether
respondent's position with respect to section 6015(c) was
substantially justified.  In deciding whether to award
administrative and litigation costs, therefore, we focus our
analysis on the reasonableness of respondent's position with
respect to section 6015(c).

1.  Section 6015(c)

Under section 6015(c), if the requesting spouse is no longer
married to,[6] or is legally separated from, the spouse with whom
she filed the joint return, the requesting spouse may elect to
limit her liability for a deficiency as provided in section
6015(d).  Sec. 6015(c)(1), (3)(A)(i)(I).  The election under
section 6015(c) must be made no later than 2 years after the
Secretary[7] has begun collection activities with respect to the
electing spouse.  Sec. 6015(c)(3)(B).

---

[6]A requesting spouse is no longer married if she is widowed.
Rosenthal v. Commissioner, T.C. Memo. 2004-89.

[7]The term "Secretary" means "the Secretary of the Treasury
or his delegate", sec. 7701(a)(11)(B), and the term "or his
delegate" means "any officer, employee, or agency of the Treasury
Department duly authorized by the Secretary of the Treasury
directly, or indirectly by one or more redelegations of
authority, to perform the function mentioned or described in the
context", sec. 7701(a)(12)(A).

In general, section 6015(d) provides that any item giving rise to a deficiency on a joint return shall be allocated to each spouse as though they had filed separate returns, and the requesting spouse shall be liable only for her proportionate share of the deficiency that results from such allocation.  Sec. 6015(d)(1), (3)(A).  To the extent that the item giving rise to the deficiency provided a tax benefit on the joint return to the other spouse, the item shall be allocated to the other spouse in computing his or her proportionate share of the deficiency.[8] Sec. 6015(d)(3)(B); Hopkins v. Commissioner, 121 T.C. 73, 83-86 (2003).

An election under section 6015(c) is invalid, however, if the Secretary demonstrates that the requesting spouse had actual knowledge, when signing the return, of any item giving rise to a deficiency that is otherwise allocable to the nonrequesting spouse.[9]  Sec. 6015(c)(3)(C).  In cases involving erroneous deductions, an individual is deemed to have actual knowledge of an item giving rise to a deficiency if she has actual knowledge of the factual basis for the denial of the deductions.  King v.

---

[8]In addition, the requesting spouse's proportionate share of the deficiency shall be increased by the value of any disqualified asset transferred to her by the nonrequesting spouse.  Sec. 6015(c)(4).

[9]An election under sec. 6015(c) is also invalid if the Secretary demonstrates that assets were transferred between the individuals filing the joint return as part of a fraudulent scheme.  Sec. 6015(c)(3)(A)(ii).

Commissioner, 116 T.C. at 204.  Although the requesting spouse bears the burden of proving the portion of the deficiency that is properly allocable to her, see sec. 6015(c)(2), respondent bears the burden of proving that the requesting spouse had actual knowledge of any items giving rise to the deficiency, sec. 6015(c)(3)(C).

 2. Reasonableness of Respondent's Position

Respondent contends that the position taken in the notice of determination was substantially justified because the information available to the Appeals officer at the time led him to believe that "petitioner had actual knowledge of the items giving rise to the deficiencies".  In arguing that the Appeals Office's position was reasonable, respondent explains that because the Appeals officer determined that petitioner had actual knowledge, he did not have to consider whether disqualified assets had been transferred to petitioner, whether assets had been transferred between petitioner and Mr. Owen as part of a fraudulent scheme, or how the deficiencies in issue could be allocated under section 6015(d).

Respondent further contends that the position in the answer was substantially justified because (1) the information available to him at the time showed that petitioner had knowledge of and had been involved with the Hoyt organization, and (2) without further factual development, it was impossible to determine

whether petitioner had actual knowledge, to confirm that no disqualified assets had been transferred to petitioner, or to confirm that no assets had been transferred between petitioner and Mr. Owen as part of a fraudulent scheme. Respondent also argues that when the answer was filed, the deficiencies at issue could not be allocated between petitioner and Mr. Owen under section 6015(d) because the parties disagreed about whether and to what extent the investment in DGE was attributable to petitioner.

We reject respondent's justification for his administrative and litigation position for several reasons. First, respondent's argument that he lacked sufficient information to make a determination under section 6015 and that the lack of information was somehow petitioner's fault is completely unsupported by the record for purposes of this motion. Petitioner attached to her Form 8857, dated July 21, 2000, a detailed recitation of the relevant facts supporting her request for relief. In petitioner's statement of disagreement dated September 14, 2001, appealing the Service's denial of relief under section 6015, petitioner stated that she had no actual knowledge of the items giving rise to the liabilities in question and provided respondent with another detailed statement of the facts in support of her argument that she was entitled to section 6015(c)

relief.[10]  Petitioner also reminded the Appeals officer that the

burden of proof is on the Commissioner to show actual knowledge

and advised him of the proper standard for actual knowledge as

set forth in King v. Commissioner, supra at 204.  Further, in the

cover letter attached to the statement of disagreement,

petitioner offered to provide additional factual information to

the Appeals officer upon request.

The Appeals Office issued its notice of determination nearly

1 year after petitioner submitted her September 14, 2001,

statement.  The record, however, does not disclose any effort by

the Appeals Office to request any additional factual information

from petitioner or to pose any questions to petitioner after the

September 14, 2001, statement of disagreement or before the

notice of determination was issued on September 9, 2002.

Respondent had ample opportunity to obtain the additional

information he felt he needed to accept petitioner's

representations regarding the section 6015(c) requirements and

the exceptions to relief contained in section 6015(c)(3)(C), (4)

and (d)(3)(C) during the administrative proceeding, but he did

not request any additional information from petitioner until the

discovery phase of this case.  Respondent's delay in obtaining

---

[10]A party's statement, if credible, is evidence on which the finder of fact may rely to establish a relevant fact.  In this case, there is nothing in the record to suggest that petitioner's statement regarding her lack of actual knowledge was not credible.

any additional information undermines his argument that, before issuing the notice of determination or answering the petition, he lacked the information necessary to make a determination under section 6015(c).  Moreover, respondent's failure to analyze the effects of his administrative and litigation position in light of the extensive factual information petitioner had provided supports our conclusion that respondent's position was not substantially justified under the circumstances.  See Powers v. Commissioner, 100 T.C. 457, 473 (1993) (Commissioner's position was not substantially justified because it had no factual basis, and Commissioner made no attempt to obtain relevant information before adopting his position), affd. in part, revd. in part, and remanded in part 43 F.3d 172 (5th Cir. 1995).

Second, in determining that petitioner had actual knowledge, respondent failed to properly evaluate the standard for actual knowledge articulated in King v. Commissioner, supra, and Mora v. Commissioner, 117 T.C. 279 (2001), in light of the extensive information he had acquired regarding the operation of the Hoyt partnerships.  When the notice of determination was issued on September 9, 2002, the Service had already entered into a settlement agreement with Mr. Hoyt and was well aware of the basis for adjusting the Hoyt partnership items at issue in this case.  See River City Ranches #1, Ltd. v. Commissioner, T.C. Memo. 2003-150, affd. in part, revd. in part and remanded 401

F.3d 1136 (9th Cir. 2005); Mekulsia v. Commissioner, T.C. Memo. 2003-138, affd. 389 F.3d 601 (6th Cir. 2004); Durham Farms #1, J.V. v. Commissioner, T.C. Memo. 2000-159, affd. 59 Fed. Appx. 952 (9th Cir. 2003); Shorthorn Genetic Engg. 1982-2, Ltd. v. Commissioner, T.C. Memo. 1996-515; Bales v. Commissioner, T.C. Memo. 1989-568.  Moreover, it was a matter of public record when respondent adopted his position that Mr. Hoyt had overstated the number and value of cattle sold to the partnerships.[11]  See, e.g., Mora v. Commissioner, supra at 292.

In King v. Commissioner, supra at 204, we held that "the proper application of the actual knowledge standard in section 6015(c)(3)(C), in the context of a disallowed deduction, requires respondent to prove that petitioner had actual knowledge of the factual circumstances which made the item unallowable as a deduction."  In other words, respondent had to prove that petitioner knew the Hoyt organization had an insufficient number of cattle to sustain the partnership deductions claimed on the joint return and knowingly claimed improper deductions.  Nothing in the record indicates, however, that respondent made any reasonable effort to identify the grounds for the disallowance of the Hoyt partnership losses and credits petitioner and Mr. Owen

---

[11]By Sept. 9, 2002, Mr. Hoyt had been indicted, convicted, and sentenced for his fraudulent activities with respect to the Hoyt partnerships.

had claimed or to evaluate his ability to prove that petitioner had actual knowledge of the factual circumstances that caused the disallowance of the Hoyt partnership items before taking his position in this case. Respondent should have meaningfully evaluated whether he could prove that petitioner had actual knowledge by taking into account the information supplied by petitioner, the extensive audit and litigating history regarding the Hoyt organization and the Hoyt partnerships, and the specific information regarding the manner in which the Hoyt organization operated the Hoyt partnerships, including the ones in which petitioner and Mr. Owen had invested. The record does not indicate that respondent considered any of the information that was available to him in September 2002 before adopting his administrative position. Respondent's failure to properly apply the actual knowledge standard in the context of the information he had acquired regarding Mr. Hoyt and the Hoyt organization in this case cannot be rationalized. Respondent's lack of diligence in evaluating his ability to prove actual knowledge, therefore, was not justified. See Stieha v. Commissioner, 89 T.C. 784, 791 (1987) (Commissioner's lack of diligence in evaluating the impact of recent court opinions not substantially justified).

Third, the record discloses no meaningful effort by respondent to properly analyze section 6015(c) with respect to the position, as determined by respondent, that petitioner and

Mr. Owen had invested jointly in the Hoyt partnership. In an "EXPLANATION OF ITEMS" attached to the Appeals Transmittal and Case Memo that was prepared with respect to petitioner's section 6015 request, the Appeals Office took the position that "Joint investments in the tax shelter partnerships are considered actual knowledge and an erroneous item attributable to both spouses" and determined that in the present case, "The taxpayers were into the tax shelter jointly. The erroneous item is attributable to both." In addition, respondent admitted in the notice of determination and in his response to petitioner's motion that the facts available to him suggested that the Owens invested jointly in DGE. Nevertheless, respondent failed to consider how the deficiencies must be allocated between petitioner and her spouse under section 6015(c) and (d) if respondent's position regarding their joint investment was correct. If respondent had made the allocation that flowed naturally from his position that the Owens had invested jointly in DGE, he would necessarily have allocated the Hoyt partnership items between petitioner and Mr. Owen in accordance with their respective ownership interests. Respondent also likely would have realized that he had to prove petitioner had actual knowledge of the reasons for disallowing Mr. Owen's allocable share of the Hoyt partnership items in order for respondent to conclude that petitioner was not entitled to any section 6015(c) relief. Respondent's failure to make an

allocation under section 6015(c) further demonstrates the unreasonableness of his position.

The fourth flaw in respondent's position stems from his failure to make a computation under section 6015(c) and (d) to reflect his contention that the Owens' partnership interest in DGE was jointly owned. Had respondent done so, the resulting calculation would have shown substantially reduced tax liabilities owed by petitioner after application of section 6015(c) and (d) and would have confirmed that petitioner qualified for section 6015(c) relief.[12] If respondent had then conceded that petitioner was entitled to section 6015(c) relief in the notice of determination or in his answer, the concession might have enabled the parties to settle this case at a much earlier date.[13]

---

[12]Although respondent's calculation would not have arrived at the same tax liability numbers as those reflected in the settlement because of respondent's interpretation of sec. 6015(d)(3)(B), see Hopkins v. Commissioner, 121 T.C. 73 (2003), the computation would nevertheless have confirmed that petitioner was entitled to sec. 6015(c) relief. When our opinion in Hopkins v. Commissioner, supra, rejecting respondent's interpretation of sec. 6015(d)(3)(B), was filed on July 29, 2003, respondent had reason to know that the application of the tax benefit rule of sec. 6015(d)(3)(B) might increase the relief available to petitioner under sec. 6015(c). If respondent had revised his calculation at that time (approximately 5 months after his answer was filed), he would have arrived at the same tax liabilities as those reflected in the settlement.

[13]The fact that respondent eventually conceded that petitioner was entitled to proportionate relief under sec. 6015(c) is a factor we may consider, although it is not

(continued...)

3. <u>Conclusion</u>

We hold that respondent's administrative and litigation position was not reasonable under the circumstances and that, therefore, it was not substantially justified. Because respondent's position was not substantially justified, we conclude that petitioner was the prevailing party as defined by section 7430(c)(4)(A).

B. <u>Whether Costs Claimed by Petitioner Are Reasonable</u>

1. <u>Amount of Costs Claimed</u>

Section 7430 permits a taxpayer to recover both reasonable administrative costs[14] and reasonable litigation costs[15]. The amount of reasonable attorney's fees that we may award is limited

---

[13](...continued)
determinative, in deciding whether respondent's position was substantially justified. <u>Maggie Mgmt. Co. v. Commissioner</u>, 108 T.C. 430 (1997); <u>Powers v. Commissioner</u>, 100 T.C. 457, 471 (1993) affd. in part, revd. in part, and remanded in part 43 F.3d 172 (5th Cir. 1995).

[14]Sec. 7430(c)(2) and (3) defines reasonable administrative costs to include, in relevant part, any administrative fees or charges imposed by the Internal Revenue Service and fees for the services of an attorney (attorney's fees), incurred on or after the earliest of: (1) The date the taxpayer receives the Appeals Office notice of decision, (2) the date of the notice of deficiency, or (3) the date on which the first letter of proposed deficiency allowing the taxpayer an opportunity for administrative review with the Appeals Office is sent. Sec. 7430(c)(2).

[15]Litigation costs are those costs incurred in connection with a court proceeding. Sec. 7430(a)(2), (c)(1). Reasonable litigation costs include, among other things, court costs and fees paid or incurred for the services of attorneys. Sec. 7430(c)(1).

by statute and adjusted for cost of living.[16]  Sec. 7430(c)(1)(B)(iii) (and flush language).  A taxpayer may recover attorney's fees in excess of the statutory limit in the presence of one or more of the following special factors:  (1) Limited availability of qualified attorneys for the proceeding, (2) difficulty of the issues presented in the case, or (3) local availability of tax expertise.  Id.

Pursuant to Rule 232(d), if the parties disagree as to the amount of attorney's fees that is reasonable, the moving party must submit an additional affidavit that includes, in relevant part, the following:  (1) A detailed summary of the time expended by each individual for whom fees are sought, including a description of the nature of the services performed during each period of time; (2) a description of the fee arrangement with the client; (3) a statement of whether a special factor exists that justifies a rate in excess of the statutory limit; and (4) any other information that will assist the Court in evaluating the award of costs and fees.

The amount of petitioner's claim for administrative and litigation costs includes the cost of professional services that were charged by her attorneys to her individual account and her

_____

[16]For purposes of this motion, the statutory rate for attorney's fees is $150 per hour.  See Rev. Proc. 2003-85, 2003-2 C.B. 1184, 1190; Rev. Proc. 2002-70, 2002-2 C.B. 845, 850; Rev. Proc. 2001-59, 2001-2 C.B. 623, 628.

share of group fees that were charged to common accounts for the

benefit of several Hoyt investor clients, including petitioner.

The fees and costs petitioner claims are summarized as follows:

| Attorney/Item | Time expended | Hourly rate | Total cost |
|---|---|---|---|
| Wendy Pearson | 10.0 hours | $195 | $1,950.00 |
| Terri Merriam | 3.2 hours | 195 | 624.00 |
| Jennifer Gellner | 16.6 hours | 150 | 2,490.00 |
| Jennifer Gellner | 3.9 hours | 110 | 429.00 |
| Legal assistant | 4.1 hours | 75 | 307.50 |
| Contract assistance | 6.3 hours | 50 | 315.00 |
| Tax Court filing fee | -- | -- | 60.00 |
| Postage | -- | -- | 5.46 |
| Online research | -- | -- | 12.00 |
| Share of group fees and costs[1] | -- | -- | 7,121.37 |

Total fees and costs:  13,314.33

[1]The amount petitioner claims for her share of the group fees and costs represents charges to separate accounts for two groups of Hoyt investor clients and includes attorney's fees billed at an hourly rate of $195 for some of petitioner's attorneys and the costs of contract assistance, online research, postage, copies, and the attorneys' hotels, meals, and parking, as well as the costs of work performed by legal assistants.

2.   The Parties' Arguments

Respondent contends that the costs petitioner claims are unreasonable in that the hourly rate charged by some of petitioner's attorneys exceeds $150 per hour, and petitioner has not shown that any of the three special factors enumerated in section 7430(c)(1)(B)(iii) apply.  Respondent further argues that costs petitioner claims for her share of the group fees are not reasonable because (1) the method of billing does not properly account for the time expended or hourly rate at which the work

was performed, and (2) the fees were charged for work that contributed to the resolution of clients' cases other than petitioner's and, therefore, were not "incurred in connection with" petitioner's administrative and court proceedings as required by section 7430(a).

Petitioner contends that an "informal survey" of local attorneys shows that the prevailing hourly rate for attorneys specializing in Federal tax practice in the Seattle, Washington, area is between $225 and $350 and that billing at an hourly rate that is less than the customary rate for similar work is a factor that supports the reasonableness of the attorney's fees. With respect to her share of the group fees, petitioner contends that the group fees were charged to a group of Hoyt investor clients, all of whom had pending section 6015 claims, for work relating to common legal and factual issues that directly affected or contributed to the resolution of each client's case. Petitioner's counsel further contend that the group fee arrangement allowed the Hoyt investor clients to obtain professional advice and assistance at a reduced cost, that any services related to the development of factual issues unique to a particular client were charged only to the individual client, and that no client was charged for work that did not directly benefit the client's case.

3.  Hourly Rate

We first decide whether the hourly rate for the attorney's fees is reasonable.  In the absence of proof that a special factor applies, petitioner may not recover attorney's fees in excess of the statutory limit.  See sec. 7430(c)(1)(B)(iii).  Petitioner does not argue, and has otherwise failed to demonstrate, that there was a limited availability of qualified attorneys or of attorneys with tax expertise to represent her in this case or that the issues presented were sufficiently difficult to support her claim for an enhanced hourly rate.  The fact that petitioner's attorneys billed her and the other Hoyt investor clients for professional services at a rate lower than the local customary rate does not establish that the fees petitioner claims are reasonable.[17]  We conclude, therefore, that petitioner may not recover attorney's fees in excess of $150 per hour.  Id.

With respect to the attorney's fees and costs charged to petitioner's individual account, we award petitioner $1,500 for work performed by Ms. Pearson[18] and $480 for work performed by

---

[17]The existence of a prevailing hourly rate in the relevant area that exceeds the statutory rate is not a special factor. Pierce v. Underwood, 487 U.S. 552, 571-572 (1988); Foothill Ranch Co. Pship. v. Commissioner, 110 T.C. 94, 102 (1998).

[18]We compute the award of Ms. Pearson's fees as follows:  10 hours multiplied by $150 hourly rate equals $1,500.

Ms. Merriam.[19]   Because Ms. Gellner's hourly rate does not exceed the statutory limit, we find that her fees are reasonable and award petitioner $2,919 for Ms. Gellner's professional services. Respondent does not object to the reasonableness of the costs petitioner claims for contract assistance, for filing fees, for postage, for online research, and for the services of legal assistants that were charged to her individual account. Consequently, we award petitioner those costs in the amount of $699.96.[20]

### 4.   Allocation of Group Fees

We next decide whether the attorney's fees and costs for petitioner's share of the group fees are reasonable and were reasonably allocated among petitioner and the other Hoyt investor clients.  Section 7430(a) authorizes an award of reasonable administrative and litigation costs incurred <u>in connection with</u> an administrative or court proceeding brought by or against the

---

[19]We compute the award of Ms. Merriam's fees as follows: 3.2 hours multiplied by $150 hourly rate equals $480.

[20]This figure includes the following costs:  $307.50 for legal assistants, $315 for contract assistance, $60 for Tax Court filing fee, $5.46 for postage, and $12 for online research.

Only costs for the services of an individual who is admitted to practice before this Court or the Internal Revenue Service may be awarded as attorney's fees.  Sec. 7430(c)(3)(A).  We award fees for work performed by legal assistants, therefore, as costs, rather than as attorney's fees.  See <u>Fields v. Commissioner</u>, T.C. Memo. 2002-320; <u>O'Bryon v. Commissioner</u>, T.C. Memo. 2000-379.

United States with respect to the determination, collection, or refund of any tax. In order for costs, including attorney's fees, to qualify as reasonable litigation or administrative costs, they must come within the relevant definitions, sec. 7430(c)(1) and (2), and they must be incurred in connection with a qualifying proceeding.

Petitioner's attorneys represent many Hoyt investors. It is not surprising or unreasonable that they would perform certain legal work for the common benefit of similarly situated clients. Under certain circumstances, it may be both efficient and economical for an attorney to allocate the fees and costs for legal research and other legal work benefiting several clients equitably among those clients as long as the clients agree, the fees and costs are reasonable, and the attorney appropriately allocates the common legal work. See, e.g., Minahan v. Commissioner, 88 T.C. 516 (1987), and Minahan v. Commissioner, 88 T.C. 492 (1987), in which we allocated common costs among several taxpayers who were represented by the same attorneys under an agreement that provided for the sharing of costs. Moreover, legal work that benefits multiple clients is no less relevant to an administrative or court proceeding than work performed solely for one client. If the work is performed for multiple clients and enables an attorney to properly represent a particular client in the administrative or court proceeding described in section

7430, the section 7430(a) requirement that the costs for such work are "incurred in connection with" the proceeding would appear to be satisfied.

Petitioner's counsel produced billing records for accounts of two Hoyt investor client groups seeking relief from joint and several liability to substantiate petitioner's share of the group fees. The billing records for both group accounts identify the attorneys who performed work on the section 6015 cases and set forth the time expended by each attorney, the attorneys' hourly rates, and the nature of the work performed.[21] Petitioner's counsel contend in their supporting declarations that one group of Hoyt investors (the general group) ranged in size from 97 to 75 members during the 14-month period that petitioner participated in the group fee arrangement and that petitioner's pro rata share of the general group's fees was computed by dividing the total monthly charges equally among all members of the group. Petitioner's counsel further contend that there existed a separate group of nine Hoyt investors, including petitioner (the litigation group), whose cases were set for trial during the Court's February 2004 trial session and that the nine Hoyt investors shared the total billing costs of trial preparation equally, with the exception of approximately 15 hours

---

[21]The billing records appear to be missing pages for the month of December 2003, including the summary page of that month's total charges. See infra note 24.

that were allocated among the general group.  In addition,
petitioner's counsel produced a spreadsheet demonstrating how the
total monthly fees incurred by the general group of Hoyt investor
clients in January 2004 were divided equally among petitioner and
the other participants.

After reviewing the record, we conclude that petitioner's
share of the group fees was incurred in connection with her
section 6015 proceeding, that petitioner has benefited from the
work her attorneys performed for both groups of Hoyt investor
clients, and that petitioner is entitled to recover a reasonable
share of the fees and costs she incurred as a member of each
group.  With respect to the litigation group of Hoyt investor
clients, we award petitioner $3,577.22, which represents a one-
ninth share of the attorney's fees adjusted to an hourly rate of
$150 and costs.[22]

---

[22]We compute petitioner's share of the litigation group's
fees and costs as follows:  $37,667 (total fees and costs
incurred by litigation group), minus $13,962 (work performed by
attorneys at $195 hourly rate), plus $10,740 (total attorney's
fees incurred at $195 hourly rate adjusted to hourly rate of
$150), minus $2,250 (15 hours of work performed at an hourly rate
of $150), divided by 9 (members of litigation group), equals
$3,577.22.

We subtracted 15 hours of work performed at an hourly rate
of $150 in computing the total amount of fees and costs incurred
by the litigation group because petitioner's counsel stated that
approximately 15 billable hours shown on the billing records of
the litigation group's account were actually charged to the
members of the general group.  Because petitioner's counsel have
failed to identify the nature of the work or hourly rate for
(continued...)

The problem with petitioner's attempt to recover her allocable portion of the general group's fees and costs is that the information provided does not enable us to fully evaluate the reasonableness of the group fees or the reasonableness of the allocation. The composition of the general group of Hoyt investors varied from month to month as clients chose to dismiss their claims or became widowed or divorced and sought relief only under section 6015(c). Because the billing records for both petitioner's and the general group's accounts lack detailed information regarding the number of Hoyt investor clients who participated in the fee arrangement in each of the relevant months, it is impossible to verify that the generic monthly charges for group fees that appear on the records for petitioner's individual account are reasonable and were reasonably allocated among petitioner and the other Hoyt investors clients.[23]

---

[22](...continued)
those 15 hours, we assume that they were billed at the highest hourly rate allowed. Further, we do not add any charges for the 15 hours to the total costs and fees incurred by the general group of Hoyt investors in computing petitioner's share of that group's fees and costs because we lack any information about the 15 hours of work performed.

[23]Had petitioner produced documentation for each month that showed the number of clients who shared the fees, such as a spreadsheet similar to that produced for the January 2004 fee allocation, we could have properly determined whether the amount of costs petitioner claims was reasonable.

Petitioner bears the burden of proving that the amount of the costs claimed is reasonable. Rule 232(e); <u>Powers v. Commissioner</u>, 100 T.C. at 491. We conclude that because petitioner has failed to fully substantiate her claim for a share of the general group's fees, she is entitled to recover only a portion of the amount she claims. For purposes of computing the amount petitioner is entitled to recover, we shall assume that the composition of the general group of Hoyt investor clients remained constant at its greatest size, 97, throughout the 14-month period that petitioner participated in the group fee arrangement. Accordingly, we award petitioner $2,301.95, which represents a one-ninety-seventh share of the general group's attorney's fees adjusted to an hourly rate of $150 and costs.[24]

---

[24]Although the billing records submitted for the general group's account were incomplete, see <u>supra</u> note 21, we were able to construct a complete set of billing records based on the records submitted in related cases involving motions for litigation costs that were filed by other members of the general group of Hoyt investors. See <u>Bulger v. Commissioner</u>, docket No. 3829-03; <u>Foy v. Commissioner</u>, T.C. Memo. 2005-116. We take judicial notice of the records submitted in these related cases for purposes of computing the amount we award petitioner for her share of the general group's fees and costs. We compute petitioner's share of the general group's fees and costs as follows: $256,031.11 (total fees and costs incurred by general group of Hoyt investors), minus $141,882 (attorney's fees incurred at hourly rate of $195), plus $109,140 (total attorney's fees incurred at $195 hourly rate adjusted to hourly rate of $150), divided by 97 (members of Hoyt investor group), equals $2,301.95.

5.   Conclusion

To summarize, we award petitioner the following attorney's

fees and costs:[25]

| Attorney/Item | Time expended | Hourly rate | Total cost |
|---|---|---|---|
| Wendy Pearson | 10.00 hours | $150 | $1,500.00 |
| Terri Merriam | 3.20 hours | 150 | 480.00 |
| Jennifer Gellner | 16.60 hours | 150 | 2,490.00 |
| Jennifer Gellner | 3.90 hours | 110 | 429.00 |
| Costs | -- | -- | 699.96 |
| Share of Group Fees and Costs[1] | -- | -- | 5,879.17 |

Total fees and costs awarded:  11,478.13

[1]Petitioner's award for her share of group fees and costs
includes $3,577.22 (share of fees from litigation group of Hoyt
investors) and $2,301.95 (share of fees from general group of
Hoyt investors).

C.   Conclusion

We have carefully considered all remaining arguments made by

the parties for results contrary to those expressed herein, and,

to the extent not discussed above, we find those arguments to be

irrelevant, moot, or without merit.

---

[25]Respondent does not contend that the fees and costs at
issue here must be traced and allocated to the various positions
taken by the parties under sec. 6015, nor does he contend that
his positions under sec. 6015(b) and (f) were substantially
justified.  Moreover, respondent's failure to timely and properly
evaluate petitioner's sec. 6015(c) argument, in our view, was
responsible for the legal work expended on arguments for relief
under sec. 6015(b) and (f).  Consequently, we have not attempted
to allocate the fees and costs to the various arguments made by
the parties under sec. 6015.

To reflect the foregoing,

An appropriate order and
decision will be entered.
